# Staunton

OLGA HUGHES V. NEWTON E. HUGHES.

September 13, 1939.

Record No. 2136.

Present, Campbell, C. J., and Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*Fred B. Greear* and *Walter B. Phipps,* for the appellant.

*J. C. Smith* and *S. H. & Geo. C. Sutherland,* for the appellee.

HUDGINS, J., delivered the opinion of the court.

This is a suit for divorce, instituted by Newton E. Hughes against his wife, Olga Hughes. The bill alleges that the wife was jealous, quarrelsome and nagging; that she falsely accused her husband of infidelity, and that as a result of continuous bickering his health became so impaired that he was forced to leave his home, resign as assistant cashier of a branch bank in Haysi, and secure employment at a reduced salary in Richmond. The husband prayed that the custody of their only child, a boy eight years of age, be given to him, or his father—W. E. Hughes, and that he be granted a divorce *a mensa.*

The wife filed her answer and cross-bill. The answer denies each material allegation of the bill. The cross-bill alleges that the husband wilfully, and without just cause, deserted her; that she was without funds necessary to defend her rights in the suit, and that she had no separate means to support herself and her child. The prayer of the wife was that her husband be compelled to pay her temporary alimony *pendente lite,* suit money and attorney's fee, and permanent alimony, and that the custody of the child be awarded to her.

On the final hearing the chancellor denied the parties any relief, but leave was given either party to apply to the court "as future circumstances might require, for the care, custody, maintenance and education of the infant." To that decree the wife sought and obtained this appeal. The husband assigns cross-error. These contentions make it necessary to examine the evidence, in detail.

It appears that the parties were married on May 17, 1924, and lived together, as man and wife, in Dickenson county until January 1, 1938. The only issue of this marriage is a son, Robert Edward Hughes, who was born in April, 1931. This couple was entirely dependent for their sustenance upon the earnings of the husband. Soon after the marriage, he acquired a lot in the town of Clintwood, and with the active cooperation of his wife, built thereon a modest home, which cost approximately $2,500.00. Prior to 1937, the parties seem to have lived together happily, peacefully and contentedly, without any substantial disagreements.

During most of the married life of the parties, the husband was connected with county politics in Dickenson county. He served as deputy clerk of the county for some four years. He then became deputy treasurer of the county, and continued as deputy treasurer until John M. Rasnick, the treasurer, was defeated for the office in the November election, 1935. Soon after this date he secured a position as assistant cashier of the Cumberland Bank & Trust Company, and was placed in charge of a branch of this bank at Haysi, in Dickenson county. For several months the parties continued to live at Clintwood. The husband drove twenty-two miles to the bank in Haysi each day to work. In May of the same year, the family moved into a rented house at Haysi, for which they paid $25.00 a month. The home in Clintwood was rented to third parties, for $20.00 per month. This latter sum was used by the wife, with the husband's consent, as spending money for herself and child, except a small part which was used for repairs upon the house in Clintwood.

Sometime in the late summer or the early fall of 1937, the husband executed a deed of gift conveying the house and lot in Clintwood to his wife. He stated that this was done in an effort to stop her jealous bickerings; she claims that it was done without her suggestion, and that the deed was left among her papers unrecorded until sometime in January, 1938.

The husband contends that he was forced to leave his wife in December, 1937, and states his reason for so doing was "to get relief from the nagging and worries." The first and only specific instance found in his testimony as to this "nagging and worry" occurred in the fall of 1934. He stated that on this occasion "he was accused of a woman in this town" (Clintwood) ; that he was nagged and annoyed for a period of two months; he then "explained to her that there was no ground for such accusations. * * * I don't know whether I convinced her I was innocent or not, but after we had discussed it and she made the statement that she wouldn't never bring it up again, I told her I wouldn't live with her again if she did." He does not claim that any other strain occurred in his marital life until July, 1937, in which month his wife again made false accusations against him and repeated them at intervals the rest of the year. The substance of these alleged false accusations, as stated by the husband, was that his wife repeatedly said to him "she knew more on me than I thought she knew. * * * After admitting that she was jealous, I was never able to get her to point out any particular party, in order that I might adjust or clarify myself."

This is the type of testimony which the husband claims seriously impaired his health and caused him to lose weight.

The uncontradicted evidence is that the husband had a serious attack in June, 1937, thirty days before he claims she began for the second time to make accusations against him. Dr. F. H. Smith, a member of the staff of the Johnston Memorial Hospital in Abingdon, Virginia, made a detailed medical report on the condition of Newton E. Hughes. In this report it is stated that the patient was suffering from

a severe attack of indigestion and that he had been subject to these attacks for four years prior to June 7, 1937, the date of the report.

No witness other than the husband attributed his attacks of indigestion and nervousness to his wife's treatment of him. The friends and neighbors who testified in the case stated that so far as they could observe the wife was quiet, considerate and attentive of her husband's welfare. They never heard her quarreling with her husband, or saw any evidence of jealousy which her husband testified she exhibited because of his attentions to other women.

Code, section 5106, provides that a suit for divorce shall be instituted and conducted as other suits are, "except that the bill shall not be taken for confessed, nor shall a divorce be granted on the uncorroborated testimony of the parties, or either of them; and, whether the defendant answer or not, the cause shall be heard independently of the admissions of either party in the pleadings or otherwise; * * * "

The husband's testimony of his wife's ill treatment of him is very general, vague and indefinite. It is not corroborated. Hence, the trial court was clearly right in denying his prayer for a divorce *a mensa*.

The husband contends that he had made ample financial provision for his wife and child, and that she is not entitled to any affirmative relief. These financial provisions were:

(1) A conveyance to her of the home in Clintwood, valued at approximately $3,000.00.

(2) That since the separation he has sent her $20.00 per month.

(3) That he has arranged, through his father, with merchants in Clintwood to extend $30.00 a month credit to his wife for food and clothing.

(4) That he gave her an automobile and other personal property, before instituting this suit.

It seems that after the husband had definitely determined to leave his wife, he had his father, W. E. Hughes, and his lawyer, J. C. Smith, make her a proposition for the settlement of their marital difficulties. The wife understood this

proposition to be that, if she would return from Haysi to Clintwood, she would have the home and the furniture, free of debt, that the custody of the boy would be given to W. E. Hughes and that either she or her husband could visit him whenever they so desired, and that W. E. Hughes would not permit either her or the boy to suffer for food or clothing. In the event the wife accepted this proposition, she surrendered her right to the care and custody of her only child, the possession and title to a Chevrolet car registered in her name, and virtually transferred her marital right to look to her husband for maintenance, to his father, W. E. Hughes, who was under no legal obligation to provide such maintenance. This proposition was declined by the wife.

It appears that the husband, without consulting his wife, notified the tenant in the home at Clintwood to vacate on January 1, 1938. The husband took his wife's car and kept it in Richmond. Knowing that her husband had left her, she moved her furniture from Haysi to Clintwood, and stored it in the home, and continued to live with one of her sisters. Early in 1938, she recorded the deed of gift from her husband, and rented the home (except two rooms in which her furniture was stored) for $22.50 per month. The father, W. E. Hughes, gave her $10.00 a month for January and February, and she received $20.00 a month for March, April and May. She was not fully informed as to what arrangements, if any, had been made for her to obtain the necessities of life from the merchants in Clintwood, and as a matter of fact never bought one pennyworth from them. This arrangement for extending credit to the wife was made by W. E. Hughes, who is under no legal obligation to support and maintain Olga Hughes and her son, and therefore this extension of credit to the wife may be withdrawn at will. The inference from the testimony is that it has already been so withdrawn.

It further appears that Newton E. Hughes owed the following obligations:

(1) He was accommodation endorser on a note for $800.-00 executed by John M. Rasnick, his former boss, held by the receivers of the Dickenson County Bank.

(2) He was maker of two notes, totalling $250.00, held by the Cumberland Bank & Trust Company.

(3) He owed an open account of $46.00 due the Haysi Motor Sales Company for automobile tires, repairs, and gasoline.

After his wife had refused to accede to her husband's unreasonable proposition, and after this suit was begun, he informed his creditors, either directly or indirectly, that he had conveyed his home to his wife, and suggested that they bring suit to set aside the deed and subject the home to the payment of the debts owed by him. In addition, he instructed Haysi Motor Company to charge the $46.00 account to him and his wife jointly, and obtain a joint judgment against her.

Every creditor followed his suggestion, and receivers of the Dickenson County Bank filed a suit against N. E. and Olga Hughes to set aside the deed conveying the house and lot in Clintwood to the wife and subject that property to sale to satisfy the debt due and owing by her husband. The house and lot were thus sold by decree of court, at public auction, and brought approximately $1,900. All except about $200.00 will be used to pay the debts and costs of the proceedings.

In addition, Newton E. Hughes gave a written order to W. E. Hughes, directing the father to go to the home of Olga Hughes, seize the furniture and sell it to pay a part of his obligations. Pursuant to these directions, W. E. Hughes, through his agents, broke into the rooms in which the furniture was stored, seized and sold a part of it, and retained the proceeds and unsold furniture in part payment of debts which W. E. Hughes claims the son owes him and his wife, Mrs. W. E. Hughes.

Sometime in June, 1938, the wife obtained possession of the car in Richmond, and sold it for $180.00 net to her. She collected one or two months' rent before the home was

sold. She received, within five or six months, $80.00 from her husband and his father, but most of the checks were earmarked for the benefit of the son. These sums, plus a small amount that she may receive from the proceeds of the sale of her home after her husband's debts and cost of litigation have been deducted, constitute her entire financial assets.

It is to be noted that the suit to set aside the deed to the wife was not only instituted at her husband's suggestion, but the principal debtor, James M. Rasnick—his former employer—is now employed at a substantial salary by the same State department that employs Newton E. Hughes. The continued friendship between Rasnick and Hughes, together with other circumstances revealed in the record, indicate that if Hughes had really desired to prevent the sale and preserve his wife's home, he could have done so. However that may be, the course pursued by the husband has deprived his wife of her home, furniture, and all other tangible assets save those enumerated above. The contention of the husband that he has made ample financial provision for his wife and child is not supported by the evidence.

But even if he had entered into a voluntary, binding obligation to support and maintain his wife and child, and the court had found it insufficient under all the circumstances of the case, then it could have exercised its discretion and changed the amount set forth in the agreement.

In *Gloth* v. *Gloth*, 154 Va. 511, 536, 153 S. E. 879, 887, 71 A. L. R. 700, we said: "Prior to the institution of the suit for a divorce *a mensa et thoro*, the husband may in large measure decide for himself what he will contribute to the support of his wife, subject to the proviso that it must be reasonably sufficient considering his circumstances and her needs. But after the institution of the suit the amount which he will contribute to her support, or which she may demand that he contribute to her support, is no longer one for the determination of the parties but for the court, whose jurisdiction to regulate this subject having attached ousts the judgment and discretion of the parties."

It is true that in the *Gloth Case* the wife had obtained a divorce *a mensa*. In this case, the trial court correctly ruled that Newton E. Hughes was not entitled to such a decree, and since the wife, in her cross-bill, did not ask for a divorce, no decree of divorce was granted. Since the date of opinion in the *Gloth Case,* Code, section 5111, has been amended and now, in part, reads as follows: "Upon decreeing that neither party is entitled to a divorce, the court may make such further decree as it shall deem expedient concerning the estate and maintenance of the parties, or either of them, and the care, custody and maintenance of minor children."

The trial court judicially determined that the husband had left his wife without legal cause. The evidence revealed that before and after the husband had begun this suit, by conduct and statement, he had fully determined to ignore all marital ties so far as Olga Hughes was concerned. The wife is living with a sister, who married an uncle of her husband, and at the present time is in a measure dependent upon the charity of her family. The husband, by his testimony and conduct, reveals an utter indifference to the distressing situation of his wife.

The 1934 amendment to section 5111 gives the trial court discretion as to whether it will or will not enter a decree providing for the maintenance of either of the parties, when no divorce is awarded. This is a judicial discretion which a trial court, in the proper case, must exercise.

In the case at bar, the proper parties are before the court. Apparently each side has fully developed all available pertinent evidence. As stated, this evidence establishes that the husband has wilfully, and without just cause, deserted his wife, and that at this time she has no reasonable expectation that her husband will ever be willing to resume marital relations with her. The wife appears to be an innocent party. Under these circumstances, failure to exercise the judicial discretion vested by the statute in the court constitutes reversible error.

■ Newton E. Hughes is not now in a position to accept the custody of his child. In fact, he contends that its custody should be awarded to W. E. Hughes, the child's grandfather. It is true that the grandfather is a suitable person, willing to assume the responsibility of rearing the child, but Olga Hughes, his mother, also wants the child. The evidence affirmatively shows that she is a fit and suitable parent to have the custody of her boy. So far as this record is concerned, she appears to be an innocent victim of her husband's breach of his marital ties. Under these circumstances, she is entitled to the custody of the child, and the trial court should have so declared.

■ The trial court refused to allow the wife either temporary or permanent alimony, suit money, or counsel fee. This was error.

■ A husband "is under a legal obligation to support his wife and children, and if, without fault upon their part, he renders it impossible for them to remain under his roof, he cannot by his misconduct escape the performance of the duty which the law imposes upon him." *Owens* v. *Owens,* 96 Va. 191, 195, 31 S. E. 72, 74. The wife asked that she be paid $50.00 per month for the support and maintenance of herself and child. The husband seemed to think that this sum was fair and reasonable, as he testified he had arranged for her to receive this sum in cash and credit. After the final decree dismissing the cause, the wife was left with no assurance that she would receive any sum in cash or credit for the living expenses of herself and child. The parties had submitted their respective contentions, presumably supported by all available evidence, to a court of equity—a court clothed with full power to settle the rights and equities of the parties. It was the duty of the chancellor to pass upon the question presented, and not force the parties at some future date to again litigate the same issue. The necessities of the wife and child were immediate. She should not have been left to depend for sustenance upon the charity of members of her family, or upon the whim of a husband who had deserted her without just cause.

■ Where a wife has no separate estate and is a defendant in a divorce suit brought by her husband, "it is proper that she should be allowed a reasonable sum, to be paid by her husband to counsel of her own choice." *Colbert* v. *Colbert,* 162 Va. 393, 174 S. E. 660.

Counsel for Olga Hughes filed a petition in this court asking that he be allowed the sum of $100.00 for legal services rendered the wife in this court. It is stated in the petition that this is the minimum sum fixed in the schedule of fees adopted by the "Wise County Bar Association for obtaining an appeal and appearing in the Supreme Court of Virginia."

In *Craig* v. *Craig,* 115 Va. 764, 80 S. E. 507, decided January, 1914, this is said:

"Counsel for appellee have asked that an allowance for counsel fees be made for services rendered in this court. This we decline to do, being of opinion that the trial court is in a better position to inquire into and do what is right and just between the parties in the first instance than this court. We shall, therefore, affirm the decree and remand the cause, but with leave to counsel for appellee to prosecute their claim for compensation before the law and equity court in the first instance, with the right of appeal to this court if a proper case shall be made for its exercise."

Since the above opinion was published, the General Assembly, upon recommendation of the 1919 Code revisors, has amended Code section 6365, requiring this court to "render final judgment upon the merits, whenever, in the opinion of the court, the facts before it are such as to enable the court to attain the ends of justice." Under this provision, we have, in cases where it was not necessary to remand the case for the trial court to determine any other issue, allowed counsel an attorney's fee for appearance in this court. See *Allen* v. *Allen,* 166 Va. 303, 186 S. E. 17.

■ Counsel is entitled to compensation to be paid by the husband for his appearance both in the trial court, and in this court. As the case will have to be remanded on other questions, we deem it advisable for the lower court to pass upon the total amount of counsel's fee to be allowed.

For the reasons stated, we reverse the decree of the trial court, and remand the case, with the following directions: That the trial court—

(1) Award the custody of the infant to the wife, with leave to the father to see his child from time to time, upon reasonable conditions, to be determined by it;

(2) Determine what would be a reasonable and just amount of alimony to which the wife is entitled under the circumstances disclosed, payment of the same to be begun as of the date the decree was entered refusing an allowance of the same to her, the husband to be given credit for any monthly sum or sums he may have theretofore paid his wife;

(3) Fix a reasonable compensation to be paid counsel for the wife, for services rendered in the trial court and in this court.

In determining the compensation of counsel, permanent alimony, and the conditions under which the husband may be allowed to see his child, the trial court, upon request, should permit the parties, or either of them, to introduce additional relevant evidence on these issues.

*Reversed and remanded.*