ROBERT A. REID

v.

JUDITH N. REID

No. 1484-89-2

Decided August 27, 1991*

---

* Petition for rehearing granted October 17, 1991.

COUNSEL

Ronald R. Tweel (Michie, Hamlett, Lowry, Rasmussen & Tweel, P.C., on brief), for appellant.

John K. Taggart, III (Smith, Taggart, Gibson & Albro, on brief), for appellee.

OPINION

**KOONTZ, C.J.**—The parties to this appeal first appeared before this Court in *Reid v. Reid*, 7 Va. App. 553, 375 S.E.2d 533 (1989). In that case, we held the chancellor erred in denying Dr. Reid a divorce on the ground of Mrs. Reid's desertion and in

granting her spousal support. We further held the chancellor erred in the application of Code § 20-107.3 in fashioning a monetary award in favor of Mrs. Reid and remanded for further consideration of that issue. Finally, we vacated the award of attorney fees and costs and remanded for further consideration of such award in light of the altered circumstances and equities resulting from our decision on the other issues.

Upon remand, Mrs. Reid filed a motion requesting the chancellor to order the distribution of the proceeds from the sale of certain marital property pursuant to a prior decree or to specify the amounts to be paid to each party from these proceeds. Dr. Reid objected to this motion on the ground that any distribution of the marital property would be premature and inappropriate until the chancellor resolved the equitable distribution issue remanded by this Court and ruled on a motion for recoupment of spousal support he intended to file. Thereafter, Dr. Reid filed a "Motion for Recoupment" in which he requested that the chancellor grant him a judgment against Mrs. Reid in the amount of $25,200 for equitable recoupment of improperly paid spousal support made to Mrs. Reid pursuant to the chancellor's original decree that was overturned by this Court on appeal.

Hearings were held on August 4 and 17, 1989 concerning these motions and the issues on remand. A final decree was entered on August 24, 1989. Mrs. Reid was granted a monetary award of $35,000 with interest at eight percent per annum from August 4, 1989 until paid. Dr. Reid was ordered to pay $18,138.44 for Mrs. Reid's attorney's fees and $1,850 in costs. Finally, the prior award of spousal support was vacated and Dr. Reid's request for recoupment of the previously paid spousal support was dismissed. Dr. Reid's appeal followed.

On appeal, Dr. Reid raises the following issues: (1) whether the chancellor abused his discretion in granting the $35,000 monetary award to Mrs. Reid; (2) whether the chancellor abused his discretion in ordering Dr. Reid to pay $18,138.44 of Mrs. Reid's attorney's fees; and (3) whether the chancellor erred in denying Dr. Reid's motion for "equitable" recoupment of spousal support payments made to Mrs. Reid before the original spousal support award was vacated on appeal. On the record before us we will not disturb the chancellor's decision to grant Mrs. Reid the monetary award and attorney's fees. We also hold that it was not error to

deny the motion for recoupment.

During the pendency of the present appeal, Mrs. Reid filed a motion to dismiss, asserting that the transcripts of the proceedings held before the chancellor on August 4 and 17, 1989 were not timely filed in accordance with Rule 5A:8. Her motion contained a request that, to the extent these transcripts are necessary to determine the merits of the issues raised in Dr. Reid's appeal, the appeal be dismissed. The record reflects that these transcripts were not filed within sixty days of the August 24, 1989 final decree as required by Rule 5A:8 and no extension for this filing requirement has been granted. Accordingly, we may not consider these transcripts on appeal. This, however, does not require a dismissal of the appeal if the record is sufficient otherwise to determine the merits of the issues raised by Dr. Reid on appeal without these transcripts. *See Goodpasture v. Goodpasture*, 7 Va. App. 55, 58, 371 S.E.2d 845, 846-47 (1988); *Turner v. Commonwealth*, 2 Va. App. 96, 99, 341 S.E.2d 400, 402 (1986).

## I. The Monetary Award Issue

The final decree reflects that, by agreement, neither party on remand presented further evidence concerning the issue of the equitable distribution award and the chancellor "reviewed the prior proceedings, including the transcripts, the Commissioner's Report, and the opinion of the Court of Appeals, and [had] carefully considered each and every mandatory factor set forth in Code § 20-107.3(E)" before granting Mrs. Reid a monetary award of $35,000.[1] On brief, Dr. Reid asserts that the chancellor adopted the factual conclusions set forth in the commissioner's report and, with the exception of those overturned by this Court in the prior appeal, relied upon those facts in fashioning the monetary award to Mrs. Reid. This assertion is based upon a reference to the transcript of the August 4, 1989 hearing, which is not a part of the record. It is clear that upon remand the evidence from the prior proceedings was adopted for the present proceedings. We find no fault with this procedure. For purposes of our review what is critical, however, is whether the chancellor gave substantive consideration to this evidence as it relates to the provisions of Code § 20-107.3. *See generally Keyser v. Keyser*, 7 Va. App. 405, 374 S.E.2d 698 (1988). In short, while the essential facts remained

---

[1] The prior monetary award was in the amount of $50,000.

unchanged, the chancellor upon remand was required to reapply the provisions of Code § 20-107.3 in light of our prior finding that Mrs. Reid was guilty of desertion. *See* Code § 20-107.3(E)(5).

■ Throughout his brief, Dr. Reid refers to the transcripts to support his assertions that the chancellor abused his discretion in fashioning the monetary award. At one place in his brief, he asserts that the chancellor quantified and elaborated on the statutory factors. We have no doubt this was done. However, because these transcripts were not made a part of the record on appeal, we are unable to determine the merits of Dr. Reid's assertions, and we decline to speculate. "The judgment of the trial court is presumed correct and he who asserts the contrary is required to overcome the presumption by *record* proof . . . ." *Kaufman v. Kaufman*, 7 Va. App. 488, 499, 375 S.E.2d 374, 380 (1988) (emphasis added). Accordingly, we will not disturb the chancellor's monetary award to Mrs. Reid.

## II. The Attorney Fee Issue

■ Dr. Reid next asserts that the chancellor upon remand abused his discretion in awarding attorney fees to Mrs. Reid. Essentially, he argues that upon remand the circumstances and equities favor him and that there is no justification for this award. The final decree reflects that the chancellor "reviewed all of the equities in this case and . . . reviewed updated statements for attorney's fees and costs." On brief, Dr. Reid recites various attorney fees he has paid and will have to pay in these proceedings. These fees and costs and those referenced in the final decree are not matters within the record before us. Moreover, we do not find in the record facts which establish an abuse of discretion by the chancellor in making this award. "An award of attorney fees is a matter submitted to the trial court's sound discretion and is reviewable on appeal only for an abuse of discretion." *Graves v. Graves*, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987). Accordingly, we will not disturb the chancellor's award of attorney fees.

## III. The Recoupment Issue

We turn now to Dr. Reid's assertion that the chancellor erred in denying his motion for "equitable" recoupment of previously paid spousal support. Initially, we note that while the chancellor's reasons for denying this motion appear to be contained within the

transcripts which are not a part of the record before us, we are able to address this issue without those transcripts. We do not need to refer to these transcripts to determine the purely legal issue of whether spousal support payments made pursuant to a divorce decree which is subsequently reversed on appeal are recoverable by the payor spouse.

In the procedural context of this case, Dr. Reid's motion for equitable recoupment is a novel one for the courts of this Commonwealth. He concedes there are no Virginia appellate decisions "directly on point," and we have found none. The essence of his position is that he should be permitted to recover from Mrs. Reid a sum equal to the amount of spousal support he paid to her pursuant to a divorce decree which was subsequently overturned by this Court on appeal. Based on the notion of equitable recoupment, he asserts that he is entitled to recover that sum either by a judgment against Mrs. Reid or to have the amount of spousal support paid considered by the chancellor as a factor under Code § 20-107.3(E) in determining the amount of the monetary award.[2] We will address these assertions in turn.

A brief recital of the parties' contrasting positions brings the issue to be resolved into focus. Dr. Reid's position consists essentially of the following assertions. First, he points out that in the prior appeal concerning these parties' divorce suit we directed the chancellor to vacate the prior divorce decree insofar as it awarded spousal support to Mrs. Reid.[3] He stresses that we *vacated* the spousal support rather than *reversed* it. Consequently, he asserts that if he is not allowed to recoup, or be reimbursed, the amount of the spousal support he has paid, this Court's decision vacating the support award "has not, in fact, been followed." This is so, his argument continues, because without recoupment or reimbursement this Court's order vacating the spousal support award would only be applied "in a prospective sense," rather than having the effect of voiding the award at its inception. Thus, the distinction Dr. Reid draws between a spousal support award which is reversed on appeal and one which is vacated is that the former re-

---

[2] While Dr. Reid couches both of these remedies in terms of recoupment, for the reasons we address subsequently in this opinion, we believe restitution, rather than recoupment, is the basis for his claim for a judgment against Mrs. Reid.

[3] We left intact that portion of the decree which terminated the marriage relationship.

mains valid until reversed and recoupment is not available; whereas in contrast, the latter is a nullity from its inception and, accordingly, recoupment or reimbursement for the sums paid pursuant to such a void decree is available.

In response, Mrs. Reid argues that recoupment may only be had in actions on contract and because spousal support does not arise from a contract, recoupment may not be had for spousal support paid prior to an appellate decision terminating a spousal support award. In support of her position, she cites us to Code § 8.01-422 and various Virginia Supreme Court cases addressing statutory and common law recoupment. *See, e.g., City of Richmond v. Chesapeake & Potomac Tel. Co.*, 205 Va. 919, 140 S.E.2d 683 (1965); *Neely v. White*, 177 Va. 358, 14 S.E.2d 337 (1941); *Bunting v. Cochran*, 99 Va. 558, 39 S.E. 229 (1901). In reply, Dr. Reid stresses that he is seeking *equitable* recoupment, not statutory or common law recoupment. In making this distinction, he argues that domestic cases are equitable proceedings and that it is inequitable to deny him recoupment or reimbursement for spousal support paid pursuant to a trial court decree later held to have been in error.

We agree with Mrs. Reid that statutory and common law recoupment are not applicable to spousal support awards. The common law defense of recoupment, as explained in *City of Richmond v. Chesapeake & Potomac Co.*, "must arise out of the same transaction; the amount need not be liquidated; there can be no recovery over; the right to recoupment must be shown by a plea in the general issue, . . . it cannot be used against a sealed instrument; and *purely equitable defenses cannot be set up*." 205 Va. at 925, 140 S.E.2d at 687 (emphasis added). Statutory recoupment embodied within Code § 8.01-422, expressly applicable to "any action on a contract," has a more liberal application and remedy than common law recoupment and permits equitable defenses and a recovery by the defendant of amounts of his claim in excess of the claim of the plaintiff. Statutory recoupment and common law recoupment, however, are available only when the defendant's claim grows out of an action on a contract. *See Odessky v. Monterey Wine Co.*, 188 Va. 184, 189, 49 S.E.2d 330, 332 (1948).

It is well settled that spousal support does not arise from contract. "Spousal support involves a legal duty flowing from one spouse to another by virtue of the marital relationship," *Brown v.*

*Brown*, 5 Va. App. 238, 246, 361 S.E.2d 364, 368 (1987), not from a contract. *See also Capell v. Capell*, 164 Va. 45, 49, 178 S.E. 894, 895 (1935). It follows, therefore, that neither statutory recoupment embodied within Code § 8.01-422 nor common law recoupment is applicable to this case. When the relief Dr. Reid seeks, that is, restoration of the amount of spousal support he has paid pursuant to an erroneous decree, is viewed in terms of restitution rather than recoupment, it is clear, however, that the inapplicability of statutory or common law recoupment does not resolve the issue raised by this appeal.

Virginia has long recognized that its courts have the power to correct their own erroneous decisions through restitution. Over one hundred years ago, in *Flemings v. Riddick's Ex'r*, 46 Va. (5 Gratt.) 272 (1848), the Supreme Court held:

> A judgment or decree when reversed is a mere nullity, and a party aggrevied has a right to be restored to what he has lost by reason of such erroneous decision. He is consequently entitled to such appropriate remedies as the law gives to one whose money or property is withheld by another, against his better right.

*Id.* at 280. The Court further held that when a judgment or decree for the plaintiff is reversed, the appellate court through its mandate directs the trial court to address the issue of restitution because ordinarily the record before the appellate court does not establish that the defendant in fact has incurred a loss. *Id.* at 282. In the present case, Dr. Reid's "loss" is apparent. It is not apparent, however, that the holding of *Flemings* is applicable to spousal support awards. The issue of restitution under the circumstances existing in *Flemings* has not been the subject of frequent litigation in the appellate courts of this Commonwealth since the decision in that case. This is undoubtedly so because the right to restitution under those circumstances is clear and our legislature has provided for various protective bonds to avoid the necessity of paying the judgment and, thus, to prevent an actual loss by a successful defendant during an appeal. *See generally* Code §§ 8.01-477, 8.01-526, and 8.01-676.1. In short, it would appear that while appealing from an adverse monetary judgment, as distinguished from an order to pay spousal support, a defendant seldom pays the judgment in reliance on the right to restitution of the sums paid if

the appeal is ultimately successful. In any event, since *Flemings*, our Supreme Court has not had the occasion to address the applicability of this decision specifically to spousal support awards.

There is no consistent rule on this issue in our sister states. For example, in *Skinner v. Skinner*, 252 Ga. 512, 314 S.E.2d 897 (1984), the Georgia court held that spousal support awards cannot be given a retroactive application and thus the payor spouse is not permitted an allowance of credit for payments previously paid. In contrast, the New York courts are apparently in conflict. In *Averett v. Averett*, 110 Misc. 584, 181 N.Y.S. 645 (1920), *aff'd*, 191 A.D. 945, 181 N.Y.S. 927 (1920), the court held that the husband was required to support his wife until he was judicially absolved from that obligation and he was not permitted to recover the sums paid under a decree subsequently overturned on appeal. However, in *Shanahan v. Shanahan*, 80 A.D.2d 738, 437 N.Y.S. 2d 169 (1981), the court held that courts have the power to modify retroactively a spousal support award and to allow the payor spouse to recover sums previously paid. In contrast, in *Bryant v. Bryant*, 130 Misc. 2d 101, 495 N.Y.S.2d 121 (App. Div. 1985), the court acknowledged the *Shanahan* decision, but refused to follow it, holding instead that there is no right to restitution following a reversal or modification of a spousal support award.

We believe the proper analysis required to resolve this issue involves consideration of the statutory scheme from which our divorce courts, as equity courts, derive their authority to award spousal support as an incident to granting a divorce. We also consider the distinction between spousal support awards and money judgments, and ultimately to whether this statutory scheme concerning spousal support awards renders the holding of *Flemings* inapplicable to such awards.

Initially, we note that while the divorce courts are equity courts, their jurisdiction in domestic relations cases is entirely statutory and limited. "A suit for divorce is in essence and character qualifiedly a proceeding in rem, and is very different from a transitory cause of action, and does not involve an appeal to the general jurisdiction of the equity forum." *McCotter v. Carle*, 149 Va. 584, 592, 140 S.E. 670, 673 (1927). Thus, "[t]he many limitations, both in respect to jurisdiction and procedure, placed upon divorce suits by the statute, differentiate the divorce case from or-

dinary suits in equity and render it a chancery case *sui generis."* *Id.* at 593, 140 S.E. at 673. *See also Westbrook v. Westbrook,* 5 Va. App. 446, 455-56, 364 S.E.2d 523, 529 (1988). Thus, Dr. Reid's assertion that the divorce court, as an equity court, should permit him to "equitably" recoup the spousal support he was erroneously ordered to pay, and did pay, while appealing is not dispositive of this issue simply because the authority of the divorce court is derived entirely from the applicable statutes.

A brief review of those statutes demonstrates that they do not provide the remedy Dr. Reid seeks. Code § 20-96 grants the circuit court, on the chancery side, the authority to enter a decree for divorce. In this context we refer to the circuit court as the divorce court. As an incident of that authority, Code § 20-107.1 provides the statutory authority for the divorce court to grant spousal support. This Code section grants broad discretion to the court in determining the amount and method of payment of such an award. Once an initial award has been granted, Code § 20-109 provides, in pertinent part, that "[u]pon petition of either party the court may increase, decrease, or terminate spousal support and maintenance *that may thereafter accrue . . .* as the circumstances may make proper." (emphasis added). In conjunction with Code § 20-109, Code § 20-112 provides for notice to the responding spouse of the proceedings to increase, decrease or terminate spousal support, and specifically provides, in pertinent part, that "[n]o support order may be *retroactively* modified, but may be modified with respect to any period during which there is a pending petition for modification, but only from the date that notice of such petition has been given to the responding party." (emphasis added). When considered together, these Code sections provide a statutory scheme which authorizes the divorce court to grant spousal support consistent with the current needs of one spouse and the ability of the other spouse to provide for those needs. The circumstances of the parties may change from time to time. Thus, the statutory scheme authorizes the divorce court to grant an initial spousal support award, and, thereafter, based on the circumstances of the parties to modify that award. The court's authority to modify an award, however, is specifically limited to prospective application except only during the period of time contemplated by Code § 20-112 where there is a lapse of time between giving notice to the responding spouse of a modification petition and the date on which the court acts on the petition. Code § 20-112, by

its express terms, does not extend the court's authority to modify an award from the date of the initial award. In addition, and pertinent to the present appeal, the authority to modify a spousal support award is limited to an "increase, decrease or termination" of such award, and does not thereby expressly extend to the award of a judgment in favor of the payor spouse for previously paid amounts.

In this context, the distinction between the statutorily authorized "increase, decrease or termination" of a spousal support award in favor of one spouse and an award of a judgment of restitution in favor of the other spouse for previously paid spousal support is significant. Specifically, the decrease or termination of a prior award creates no obligation on the payee spouse. In stark contrast, the award of a judgment of restitution in favor of the payor spouse creates an affirmative obligation on the payee spouse to satisfy that judgment. We are unable to find any statutory provisions which evince a legislative intent to ignore this distinction. In addition, the decisions of our Supreme Court, relied upon in part by the dissent, are consistent with this distinction. Thus, in *Hughes v. Hughes*, 173 Va. 293, 4 S.E.2d 402 (1939), the Court ordered the trial court to award spousal support from the date spousal support had been previously denied to the wife and to credit the husband with any payments he may have paid. Restitution by the wife was not involved. Rather, credit was given to the husband against his ongoing obligation to pay spousal support. Similarly, in *Young v. Young*, 212 Va. 761, 188 S.E.2d 200 (1972), the Court reversed a denial of spousal support to the wife and directed the trial court to determine upon remand the amount to be awarded to her. Upon a subsequent appeal, in *Young v. Young*, 215 Va. 125, 207 S.E.2d 825 (1974), the Court held that the spousal support could begin no later than the date of the Court's mandate in the prior appeal. Again, restitution was not an issue. In our view, without express authority within the statutory scheme there is no implied authority within it to modify a spousal support award to the extent of granting a judgment of restitution against the payee spouse.[4]

---

[4] By the same analysis, and contrary to the conclusion reached by the dissent in this case, Code § 20-107.1 insofar as it provides that the court "may make such further decree as it shall deem expedient concerning the maintenance and support of the spouses" does not constitute authority to award a judgment for restitution of previouly paid spousal sup-

 Consistent with these statutory provisions, it has long been settled in Virginia that spousal support payments become vested as they accrue and the divorce court is without authority to make any changes as to past due installments. The obligated spouse is required to make his or her spousal support payments in accordance with the terms of the court's decree. If conditions change, the remedy is to apply to the court for relief pursuant to Code § 20-109. If appropriate relief is not obtained, the remedy is to appeal. *See generally Richardson v. Moore*, 217 Va. 422, 229 S.E.2d 864 (1976); *Cofer v. Cofer*, 205 Va. 834, 140 S.E.2d 663 (1965); *Newton v. Newton*, 202 Va. 515, 118 S.E.2d 656 (1961). This Court has consistently followed these well established principles. *See, e.g., Martin v. Bales*, 7 Va. App. 141, 147, 371 S.E.2d 823, 826 (1988) (holding that a court is without authority to modify its spousal support decree retroactively and relieve a party of the obligation to pay past due installments).

 These well established principles are, of course, limited to cases in which the divorce court has jurisdiction over the subject matter and the parties and the decree of the court is not entered as a result of fraud upon the court. In the present case, there are no such assertions. Moreover, because the court had jurisdiction to enter the divorce decree and, as an incident thereto, to enter the spousal support decree, that support decree was valid until overturned on appeal. Contrary to Dr. Reid's assertions, the support decree was not void but, rather, was merely erroneous. This is a critical distinction. "Obviously the power to decide includes the power to decide wrong, and an erroneous decision is as binding as one that is correct until set aside or corrected in a manner provided by law." *Nicholas v. Commonwealth*, 186 Va. 315, 320, 42 S.E.2d 306, 309 (1947) (citation omitted).

Having determined that the statutory authority of the divorce court does not include the authority to modify retroactively its initial spousal support award by the award of a judgment of restitution in favor of the payor spouse and that the divorce court's award was not void but merely erroneous, we turn to consider whether the holding in *Flemings* is applicable to spousal support awards. For the reasons that follow, we hold that it is not.

---

port. Restitution to the payor spouse simply is not for the payor's maintenance and support, but, rather, is by definition and effect a recovery of support paid.

■ "[A] decree for alimony [now spousal support] is essentially different from an ordinary debt or judgment for money . . . . It is an order compelling [one spouse] to support [the other], and this is a public as well as a marital duty — a moral as well as a legal obligation." *West v. West*, 126 Va. 696, 699, 101 S.E. 876, 877 (1920); *accord Eddens v. Eddens*, 188 Va. 511, 517, 50 S.E.2d 397, 400 (1948). We believe this distinction between spousal support awards and money judgments coupled with public policy considerations of the uniqueness of the marital relationship compels the conclusion that the holding in *Flemings* is not applicable to spousal support awards.

The marital relationship is unique both in terms of human experience and its importance to society. The obligations that flow from this relationship are founded on natural, moral and societal concepts. When the marital relationship fails, it affects the parties and may, as well, affect society in general. Consequently, the law universally has recognized that this relationship and the obligations created within it are unique. Thus, it has been held that spousal support obligations flow from the marital relationship and not from contractual rights and obligations. *See Brown*, 5 Va. App. at 246, 361 S.E.2d at 368. Similarly, spousal support is awarded "to protect society's interests in the incidents of the marital relationship." *Jacobs v. Jacobs*, 219 Va. 993, 995, 254 S.E.2d 56, 57 (1979).

Where a need for spousal support by one spouse is established, public policy considerations of the uniqueness of the marital relationship extend to society's interests that support obligations be resolved within this relationship, and that a needy spouse not be required to seek public assistance to satisfy those needs unless necessary. In short, it is in society's interest and is consistent with natural, moral and societal concepts that support obligations created within the marital relationship be the primary responsibility of the spouse in a position to provide for the needs of the other spouse and that this responsibility exist until terminated by a final judicial decree. These public policy considerations are reflected in the provisions of Code § 20-107.1 which are commonly referred to as "no fault" provisions. This Code section provides, in pertinent part, that:

The court may make [a permanent support] award notwithstanding the existence of [a ground of divorce in a payor's spouse's favor] if the court determines from clear and convincing evidence, that a denial of support and maintenance would constitute a manifest injustice, based upon the respective degrees of fault during the marriage and the relative economic circumstances of the parties.

Code § 20-107.1.

 These same public policy considerations of the uniqueness of the marital relationship are also affected by statutory provisions concerning appeals of support decrees to the appellate courts. As a general rule, a party who wishes the execution of a judgment from which an appeal is sought to be suspended, is entitled to have the judgment suspended upon the filing of a satisfactory bond. Code § 8.01-676.1(C). However, "[t]he court from which an appeal is sought may refuse to suspend the execution of decrees for support and custody." Code § 8.01-676.1(D). This statute reflects the legislative recognition that compelling public policy reasons exist to cause the judgment for support to remain in effect and unabated during the pendency of an appeal.

When the marital relationship ends and the parties resort to the courts to resolve their disputes, the parties as well as society have an interest in the orderly resolution of the obligations that flow from this relationship. The orderly resolution of these obligations requires that the parties comply with court orders until and unless properly modified in subsequent proceedings at the trial and appellate level. Similarly, a requirement that modifications and/or reversals of prior support orders operate prospectively and not retroactively ensures the orderly resolution of these obligations. Without such a result an orderly adjudication of the rights and obligations of the parties until resolved by a final decision not subject to further appeal would be defeated. In our view, these considerations make the holding in *Flemings* inapplicable to spousal support awards. In addition, these public policy considerations compel the conclusion that we speak only prospectively and not retroactively when we overturn an erroneous, but not void, spousal support decree on appeal. In this regard, we make no distinction between vacating or reversing such a decree. We find no authority and, moreover, no reason to justify a distinction between the rule

applicable to the divorce courts and the rule applicable to the appellate courts with regard to the limitation of the prospective effect of court orders concerning spousal support.

Accordingly, we hold that when spousal support paid pursuant to an otherwise valid decree is overturned on appeal, the appellate court speaks prospectively and not retroactively when it overturns the prior decree. Thus, we hold that our decision which vacated the chancellor's prior decree requiring Dr. Reid to pay spousal support operated from the date entered in the mandate of *this* Court. Consequently, it was not error to deny Dr. Reid a judgment against Mrs. Reid for the amount of spousal support he paid prior to that date.

We turn finally to Dr. Reid's assertion that, even if he is not entitled to recoupment, the amounts he paid in spousal support should have been considered by the chancellor as a factor under Code § 20-107.3(E) in determining the amount of the monetary award in favor of Mrs. Reid. Dr. Reid bases his assertion on Code § 20-107.3(E)(11), which provides that in determining the amount of the monetary award, the court shall consider "[s]uch other factors as the court deems necessary and appropriate to consider in order to arrive at a fair and equitable monetary award."

Dr. Reid's assertion must fail for several reasons.

A distinct difference . . . exists between a spousal support award [made pursuant to Code § 20-107.1] and a monetary award made pursuant to Code § 20-107.3. Spousal support involves a legal duty flowing from one spouse to the other by virtue of the marital relationship. By contrast, a monetary award does not flow from any legal duty, but involves an adjustment of the equities, rights and interests of the parties in the marital property.

*Brown*, 5 Va. App. at 246, 361 S.E.2d at 368. Thus, the equities of spousal support and the equities of a monetary award are mutually exclusive concepts.

Moreover, Code § 20-107.3(F) specifically provides that "[t]he court shall determine the amount of any such monetary award without regard to maintenance and support awarded to either party . . . and shall, after or at the time of such determina-

tion and upon motion of either party, consider whether an order of support and maintenance of a spouse . . . shall be entered or, if previously entered, whether *such order* [of spousal support] shall be modified or vacated." (emphasis added). Thus, within this statutory framework, it is the spousal support award that may be modified based upon the court's determination of the monetary award, not vice versa. Code § 20-107.3(E)(11) may not be interpreted so broadly as to encompass spousal support payments as a factor in making an equitable monetary award. Moreover, to permit the monetary award to be influenced by a spousal support award reversed on appeal would be to permit indirectly what is not permitted directly. In short, the trial court's authority under the statutory scheme of Virginia is not so broad as to permit it to reduce the equitable share of the marital assets of a spouse who has received spousal support prior to a reversal or vacation of that support award by the appellate court.

In summary, we hold that Dr. Reid was obligated to make his support payments until relieved of that obligation by this Court on appeal. We further hold that he was not entitled to recoupment or reimbursement of these payments either directly or by way of a reduction in the monetary award in favor of Mrs. Reid.

For these reasons, we affirm the chancellor's decision.

*Affirmed.*

Barrow, J., concurred.

Benton, J., concurring and dissenting.

I concur in Parts I and II of the opinion, but I dissent from Part III because I disagree with the majority opinion's view that the law forecloses Robert Reid (the payor spouse) from seeking restitution of money paid to his former wife as spousal support.[1]

---

[1] Although the husband's motion in the trial court is styled "Motion of Equitable Recoupment," the relief that he seeks is the return of money that he paid to his former wife as spousal support. I agree with the majority that "restitution" is the more appropriate term to describe the relief sought.

As a word descriptive of a distinct cause of action or claim of a party [restitution] has a definite meaning in the law; viz., that a party against whom an erroneous judgment or decree has been carried into effect is entitled, upon reversal of such judgment or decree, to have restitution, by writ of restitution if necessary, of what he had lost thereby. It also has a more general meaning as indicative of the princi-

Whenever a decision of this Court sets aside an initial spousal support award that has not been stayed by the trial judge, I believe the trial judge, upon a proper request, must exercise discretion to determine on a case-by-case basis whether restitution is warranted.

It has long been the rule in Virginia that if, pending an appeal, the appellant has paid the judgment that is being appealed, upon reversal of the judgment, the appellant is entitled to restitution of the money so paid. *Flemings v. Riddick's Ex'r*, 46 Va. (5 Gratt.) 272, 278 (1848); *Jones v. Bradshaw*, 57 Va. (16 Gratt.) 355, 362 (1863); *Green & Miller v. Brengle*, 84 Va. 913, 916, 6 S.E. 603, 604-05 (1888). The same general rule is found in other jurisdictions. *See, e.g., Shanahan v. Shanahan*, 80 A.D.2d 738, 739, 437 N.Y.S.2d 169, 171 (1981); *Guaranty Sav. Assurance Co. v. National American Bank*, 407 So. 2d 795, 797 (La. Ct. App. 1981); *State ex rel. State Highway Comm'n v. Morganstein*, 588 S.W.2d 472, 476-77 (Mo. 1979); *Currie v. Drake*, 550 S.W.2d 736, 740-41 (Tex. Civ. App. 1977); *Rhodes v. Sigler*, 44 Ill. App. 3d 375, 377-78, 357 N.E.2d 846, 849 (1976).

The Minnesota Court of Appeals addressed a similar issue in *Mathison v. Clearwater County Welfare Department*, 412 N.W.2d 812 (Minn. Ct. App. 1987). In that case, a father had been ordered through a default judgment to reimburse the county welfare department for child support payments. He made some payments, but petitioned for full restitution after disproving paternity. In upholding the trial court's award of restitution, the appeals court relied on the Restatement of Restitution § 74 (1937), which provides:

A person who has conferred a benefit upon another in compliance with a judgment . . . is entitled to restitution if the

ples attending the restoration or return or reparation to which a party may be proven to be entitled in an appropriate proceeding, and is connected with the principle of unjust enrichment.
*William Whitman Co. v. Universal Oil Prods. Co.*, 125 F. Supp. 137, 148 (D. Del. 1954) (footnote omitted). It is generally held that "the remedy of restitution is not confined to any particular circumstances or set of facts. It is, rather, a flexible, equitable remedy available whenever the court finds that 'the defendant, upon the circumstances of the case, is obliged by the ties of natural justice and equity' to make compensation for benefits received." *Murdock-Bryant Constr., Inc. v. Pearson*, 146 Ariz. 48, 53, 703 P.2d 1197, 1202 (1985).

judgment is reversed . . ., unless restitution would be inequitable . . .; if the judgment is modified, there is a right to restitution of the excess.

*Id.* (quoted in part in *Mathison,* 412 N.W.2d at 813).[2] Distinguishing a case which held that support orders are enforceable until modified, the Minnesota court ruled that the prior case "did not address payments made pursuant to a judgment which was subsequently vacated." *Id.* The court rejected outright the notion that the vacation of a support obligation must be prospective only and placed the burden on the payee to demonstrate that it would be "inequitable to return the parties to their original positions." *Id.*

The majority opinion in this case is based in part upon the premise that divorce suits are different because "spousal support payments become vested as they accrue and the trial court is without authority to make any changes as to past due installments." That concept is not applicable to this case because the entitlement to support payments never vested. Whenever the decree of a trial judge has been appealed, the rights created by that decree do not vest pending the appeal.

[A] litigant, successful in the trial court, [does not] acquire a vested right upon entry of the judgment; the right is inchoate and does not become vested until the judgment has been affirmed on appeal or the time allowed for appeal has expired.

*Fletcher v. Tarasidis,* 219 Va. 658, 661, 250 S.E.2d 739, 740 (1979) (citing *Kennedy Coal Corp. v. Buckhorn Coal Corp.,* 140 Va. 37, 45, 124 S.E. 482, 484-85 (1924)). In this case, the decree awarding spousal support was reversed on appeal and, thus, the inchoate claim to support never vested.

The majority's further discussion, whether this Court's opinion should be considered retroactive with respect to the spousal support decree of the trial court then on appeal, is invalid in part due to the lack of viability of the majority's vested rights theory. "As a general rule in Anglo-American jurisprudence, judicial decisions

---

[2] The comments to the Restatement of Restitution § 74 note that "restitution [is not to be] denied because the payor had a moral duty to make the payment. . . . [But] the court can properly refuse restitution . . . if restitution would involve a substantial hardship or expense." *Id.* at 305.

are to be applied retroactively." *Department of Highways & Transp. v. Williams*, 1 Va. App. 349, 352-53, 338 S.E.2d 660, 662-63 (1986). Vested rights are generally included within those interests protected against invasion by retroactive application of laws. *See generally Shiflet v. Eller*, 228 Va. 115, 120, 319 S.E.2d 750, 754 (1984). Because, however, our resolution of the issue, whether recovery of spousal support is permissible after a decree initially ordering spousal support has been reversed on direct appeal, is not controlled by vested rights principles, retroactive application of our decision would not be barred for that reason. More significantly, however, the concept of retroactivity is irrelevant to the issue presented in this appeal. This court's reversal of the trial judge's spousal support decree became the law of the case. No legal principles of retroactivity are involved in applying the law of this case to the parties in this case. Application of the law of the case to the pending case that gave rise to that decision is simply not a retroactive application of that decision.

The issue presented in this case does not involve a retrospective or retroactive application of a statute to modify an initial spousal support order based on changed circumstances. Nor does the issue in this case implicate a court's authority to modify retroactively a presumptively lawful, pre-existing award of spousal support. This case involves two fundamental concepts: (1) this Court's authority under Code § 17-116.09 to affirm, reverse, modify, or set aside a judgment or order of the trial court, and (2) the trial judge's duty to implement the reversal and correct its error concerning the initial support order made pursuant to Code § 20-107.1.

> The effect of reversing [a] decree . . . [is] to abrogate it, and the cause [stands] in the circuit court precisely as it did before the entry of the decree. The decree [is], in effect, expunged from the records and the parties to the litigation [are] restored to their original rights. A party to a suit is presumed to know of all the errors in the record, and such party cannot acquire any rights or interests based on such erroneous decree that will not be abrogated by a subsequent reversal thereof. If such party has received benefits from the erroneous decree or judgment, he must, after reversal, make restitution . . . .

*Ure v. Ure*, 223 Ill. 454, 463, 79 N.E. 153, 156 (1906) (citations omitted). In *Flemings*, the Supreme Court of Appeals explained:

> The power of a Court to repair the injury occasioned by its own wrongful adjudication, is not derived from a mandate of the appellate forum, made upon rendering the judgment or decree of reversal, but is substantially the same which it exercises when its own process has been abused, or used without authority, by its suitors or ministerial officers . . . . And so it may [award a writ of restitution] where its process has been misapplied by its own authority erroneously exercised, as is made manifest by a reversal of the judgment or decree on which it issued, whether accomplished by its own jurisdiction, or that of a higher appellate tribunal.

> \* \* \*

> That the mandate for restitution is merely declaratory or directory [rather than statutorily imposed], is obvious from the consideration, that it is never refused upon a reversal on the merits, unless for the want of sufficient evidence to show that the erroneous judgment or decree has been actually enforced; and then the refusal is never entered on the record, but the whole matter silently referred to the cognizance of the Court below.

> \* \* \*

> Our accustomed omission of a mandate for restitution cannot, therefore, where there has been a reversal upon the merits, be treated as resulting in the monstrous perversion of justice, that there shall be no restoration to what has been lost by occasion of the erroneous judgment or decree; nor in ousting the Court below of its inherent and salutary jurisdiction of correcting the misapplication of its own process . . . .

46 Va. (5 Gratt.) at 281-84. *See also* Rule 1:1.

More recently, in *Young v. Young*, 212 Va. 761, 188 S.E.2d 200 (1972), the Supreme Court set aside a trial judge's order denying spousal support upon an initial application and remanded the case to the trial judge with instructions "to determine the amount of [spousal support] to be awarded the wife." *Id.* at 762, 188 S.E.2d at 201. On remand, the trial judge granted spousal support to the wife effective three days prior to the date of the

order. On appeal from that order, the Supreme Court held:

> We have adopted the rule "that the time permanent alimony shall commence is within the sound discretion of the court and may be made effective as of the date of the commencement of the suit. In rejecting [the wife's] argument, the chancellor assigned definitive grounds. We cannot say that his refusal to make the alimony award effective as of the date of the commencement of the suit was an abuse of discretion.
>
> However, our opinion [on the first appeal] foreclosed the exercise of the chancellor's discretion to fix a commencement date later than the date of our mandate. Accordingly, we hold that the award of alimony granted [the wife] by the [trial judge's] decree . . . is effective beginning [the date of the mandate of the first appeal] with interest from that date.

*Young v. Young*, 215 Va. 125, 126, 207 S.E.2d 825, 825-26 (1975) (citations and emphasis omitted). *See also Hughes v. Hughes*, 173 Va. 293, 306, 4 S.E.2d 402, 407 (1939) (reversing on direct appeal the trial judge's denial of spousal support to the wife under Code § 5111 (now Code § 20-107.1, as amended 1988) and ordering the trial judge to award spousal support to the wife and to calculate restitution if any due to husband for sums he may have paid).

The majority intimates that Title 20 exclusively controls "modifications" of support orders. Those particular statutory limitations involve modifications based on changed circumstances rather than errors made in the trial judge's original or underlying determination. The former modification involves a reconsideration of the parties' predetermined rights based on new, previously unconsidered facts. The latter concerns the legal and proper application of a particular right as reviewed by an appellate court, which determines the law of the case drawn from the record. To the extent the trial judge's decree is reversed, vacated, or set aside, it is a nullity. Under the majority's reasoning, no court possessing appellate jurisdiction over circuit court judgments may affect in any manner whatsoever a circuit court's support order while a direct

appeal is pending.[3]

The trial judge's authority to make an award of support and maintenance is statutory. *See Jackson v. Jackson*, 211 Va. 718, 180 S.E.2d 500, 500 (1971). Moreover, the decision *whether* to make an award is specifically prescribed as follows:

> [N]o permanent maintenance and support shall be awarded from a spouse if there exists in such spouse's favor a ground for divorce [for adultery, sodomy, or buggery committed outside the marriage]. However, the court may make such an award notwithstanding the existence of such ground if the court determines from clear and convincing evidence, that a denial of support and maintenance would constitute a manifest injustice, based upon the respective degrees of fault during the marriage and the relative economic circumstances of the parties. . . .
>
> The court, in determining whether to award support and maintenance for a spouse, shall consider the circumstances and factors which contributed to the dissolution of the marriage, specifically including adultery and any other [fault] ground for divorce under the provisions of § 20-91(3) or (6) or § 20-95.

Code § 20-107.1. The statute specifically authorizes courts to "make such further decree as it shall deem expedient concerning the maintenance and support of the spouses." Code § 20-107.1. This clause alone is sufficient to authorize a trial judge to order, in appropriate cases, restitution of spousal support paid under a decree that is later vacated. *See Hughes*, 173 Va. at 306, 4 S.E.2d

---

[3] Under the majority's reasoning, a trial judge could order spousal support in direct contravention of a stipulation or contract signed before entry of a final decree. *See* Code § 20-109. The payor spouse, then, could be required to make payments pursuant to the judge's order, under the threat of contempt, until this Court might reverse. Further, the result reached today would preclude the payor spouse from recovering any monies paid pursuant to the unlawful support order. Presumably, this would hold true even in cases where one spouse fraudulently obtained the support award. *Contras Stimmel v. Stimmel*, 163 A.D.2d 381, 383, 558 N.Y.S.2d 112, 114 (1990) (ordering the lower court to calculate restitution where support figure was based on payee spouse's misrepresentations even where support order was not directly appealed but was retroactively modified); *Bryant v. Bryant*, 130 Misc. 2d 101, 106, 495 N.Y.S.2d 121, 125 (Sup. Ct. 1985) (payor spouse entitled to restitution for overpayments of court-ordered support because of payee spouse's concealment).

at 407.

The majority's position on this issue clearly is not consistent with public policy. Significantly, in 1987 the legislature amended Code §§ 16.1-279(O), 20-74, 20-88.28:2, 20-88.30:6, 20-108, 20-112, and 63.1-252.1 so as to include the phrase, "No support order may be retroactively modified, but may be modified with respect to any period during which there is a pending petition for modification, but only from the date that notice of such petition has been given to the responding party." 1987 Va. Acts ch. 649. These extensive amendments contain a clear expression of legislative policy that support awards may be modified with respect to any period during which there is a pending contest as to the amount of the award and the parties are on notice that such a controversy exists. If, for example, this Court reversed a trial judge's denial of a petition to terminate spousal support due to change in condition, this Court would have the authority to remand the matter to the trial judge for a determination whether the payor spouse was entitled to restitution of the support payments made during the pendency of the litigation. *See* Code § 20-112. Plainly, the trial judge possesses the authority under the statute and in the exercise of discretion to order, in an appropriate case, restitution of all spousal support paid during pendency of that proceeding.

Our Supreme Court has long held the view that a trial judge's spousal support order, which has been reversed on appeal, must be modified from a date that pre-dates the order of the appellate court. In *Hughes*, the trial judge refused to grant either party a divorce and also refused to award the wife spousal support under a precursor to Code § 20-107.1 that contained similar language. *Id*. at 297, 4 S.E.2d at 403. Code § 5111 then read,

> Upon decreeing that neither party is entitled to a divorce, the court may make such further decree as it shall deem expedient concerning the estate and maintenance of the parties, or either of them. . . .

*Id*. at 303, 4 S.E.2d at 406. Holding that the trial judge erred in not awarding the spousal support, the Supreme Court remanded the case and ordered the trial judge to

> [d]etermine what would be a reasonable and just amount of alimony to which the wife is entitled under the circumstances disclosed, payment of the same to be begun as of the date the decree was entered refusing an allowance of the same to her, the husband to be given credit for any monthly sum or sums he may have theretofore paid his wife.

*Id.* at 306, 4 S.E.2d at 407-08. As *Hughes* illustrates, the concept of an equitable balancing of payments and entitlements from the point of contested error is not foreign to our jurisprudence. Similarly, when applying identical language found in Code § 20-107.1, we should be mindful of these equities in this case, in which the husband has unjustly paid support under threat of contempt. *Compare Young*, 215 Va. at 126, 207 S.E.2d at 825-26. ("We have adopted the rule 'that the time permanent alimony shall commence is within the sound discretion of the court and *may* be made effective as of the commencement of the suit' ").

Once support has been decreed by the trial judge upon an initial request for spousal support, the payor spouse who decides to appeal may seek from the trial judge an order suspending execution of the decree for support. *See* Code § 8.01-676.1(D). Thus, even though "an order compelling [one spouse] to support [the other] . . . is a public as well as a marital duty," *West v. West*, 126 Va. 696, 699, 101 S.E. 876, 877 (1920), the legislature has empowered the trial judge, upon proper application, to stay the effect of a spousal support order pending appeal if the trial judge, in the exercise of discretion, deems it sound to so do. In a few cases, a spouse who has been determined to be eligible for support and who has been judged in need according to the factors in Code § 20-107.1 may be denied support payments pending appeal if the trial judge determines from the circumstances presented that a stay is warranted. If the payor spouse is successful on appeal in those cases, the payor spouse will have suffered no financial detriment. I perceive no policy basis upon which to conclude that the payor spouse who is not able to convince the trial judge to stay the award pending appeal should be foreclosed from seeking to demonstrate that equities allow a restitution of money paid if, on appeal, the decree of support is reversed and vacated.

The policy that supports the authority of the trial judge, upon the exercise of discretion, to stay the enforcement of a support

award, likewise authorizes the trial judge, upon the exercise of discretion and in a proper case, to allow restitution of support paid pending appeal when the order granting support has been reversed and vacated. In the former case, the trial judge who has entered a stay presumably has determined upon a balancing of factors that the payee spouse's needs are not so great as to require immediate payment of the award. In the later case, the trial judge will have determined upon a balancing of factors that the repayment of support that was wrongly ordered will not cause the payee spouse to suffer undue hardship. In any event, the spouse who has paid spousal support under the threat of contempt should not be foreclosed from the opportunity to prove that the equities favor restitution.

The 1987 amendments to the Code express a legislative policy that once spousal support is placed at issue before a court and the parties are notified that the issue is before the court, the trial judge is authorized to grant relief effective the date notice was given to the spouse whose circumstances will be affected by the court's order. The policy authorizing the trial judge to exercise discretion with respect to contested support awards is consistent with Code § 8.01-676.1(D), which permits the court to refuse or grant suspension of payments during appeal in accordance with the trial judge's equitable and discretionary powers to avoid undue hardship on the parties. Thus, an award may be contested by appeal, but the trial judge, upon the exercise of discretion, may deny suspension and bond so that a needy spouse may continue to pay rent, eat, and provide for other necessities. That is not to say the payee spouse may not be obligated to compensate the payor spouse for erroneous payments. But restitution is not an absolute right since it is subject to the trial court's exercise of sound discretion. Thus, although the payments which were not suspended may have been erroneous, the trial court is not compelled to order total recompensation, but *may* order a modification with respect to any period during which the matter was pending for a decision consistent with the court's specific authority to "make such further decrees as it shall deem expedient concerning the maintenance and support of the spouses." Code § 20-107.1. This analysis is consistent with the majority's discussion of *Flemings* and protective appeal bonds. It follows from that discussion that had the General Assembly not assumed the applicability of equitable restitution in instances such as this, there would be no need for discretionary

protective bonds.

A holding allowing restitution for wrongfully ordered spousal support need not be harsh and will rest upon the exercise of sound discretion. In the proper case, the payee spouse who has disposed of the funds for necessities need not be required to repay the funds. On the other hand, in cases such as *Hughes* and *Young*, the discretionary authority may be exercised to remedy a situation in which a payee has been unjustly deprived of equitably deserved support pending appeal of a denial of an award or an inadequate initial award. In a case such as the one which we now decide, the trial judge may consider the failure of the payor spouse to seek a stay pending appeal in weighing the equities whether the payor spouse is entitled to part or all of the support that was erroneously paid pending resolution of the issue. In short, I emphasize that the authority is discretionary rather than mandatory. *See Shanahan*, 437 N.Y.S.2d at 171, 80 A.D.2d at 741 (restitution will not ordinarily be granted because of the "hardship" of forcing a spouse to repay large sums of money); *Thompson v. Baltimore & O.R. Co.*, 72 F. Supp. 65, 67-68 (E.D. Mo. 1947) (restitution is not a matter of right but, rather, is a matter of discretion to be exercised in accordance with sound principles of equity to correct what a litigant has lost by the payment of a judgment that is later reversed on appeal). The majority's holding, however, "precludes [in every case] the . . . correction of an erroneous trial court judgment granting, denying, or modifying . . . [a] support award and irrevocably perpetuates the injustice of such judgment during the appellate process." *Wasson v. Wasson*, 439 So. 2d 1208, 1213 (La. Ct. App.) (Lanier, J., concurring), *writ denied*, 443 So. 2d 592 (La. 1983).

For these reasons, I would hold that the trial judge erred in concluding that no basis in law exists for the husband's petition for restitution of spousal support with respect to the period during which this matter was pending decision. Accordingly, I would remand the matter to the trial judge for a determination whether the equities require the wife to repay all or any portion of the spousal support that this Court in the earlier appeal determined to be inappropriately ordered.