COURT OF APPEALS OF VIRGINIA


Present: Judges Willis, Lemons and Frank
Argued at Norfolk, Virginia


COMMONWEALTH OF VIRGINIA,
 DEPARTMENT OF SOCIAL SERVICES,
 DIVISION OF CHILD SUPPORT ENFORCEMENT,
 ex rel. MARC GAGNE
                                          OPINION BY
v.   Record No. 2573-98-1          JUDGE DONALD W. LEMONS
                                     FEBRUARY 22, 2000
JANET CHAMBERLAIN, A/K/A
 JANET CLARK


            FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                      Jerome James, Judge

           Maryann Shea Bright, Special Counsel (Beth J.
           Edwards, Regional Special Counsel; Mark L.
           Earley, Attorney General; Ashley L. Taylor,
           Jr., Deputy Attorney General; Robert B.
           Cousins, Jr., Senior Assistant Attorney
           General; Craig M. Burshem, Regional Special
           Counsel, on brief), for appellant.

           (Herbert W. Laine, on brief), for appellee.


     The Commonwealth of Virginia, Department of Social

Services, Division of Child Support Enforcement, ex rel. Marc

Gagne ("DSS"), appeals an order of the Circuit Court of the City

of Norfolk vacating an administrative order requiring Janet

Chamberlain to reimburse the State of New Hampshire for Aid to

Families with Dependent Children ("AFDC") expended on behalf of

her two daughters.  Finding that the trial court erred in its

conclusion that the Uniform Interstate Family Support Act

("UIFSA"), Code § 20-88.32, et seq., does not authorize the

Commissioner of the Department of Social Services of Virginia to determine the existence of an amount of a public assistance debt owed to another state, we reverse and remand.

Marc Gagne ("father") and Janet Chamberlain ("mother") are unmarried and are the biological parents of two children. Father and his two daughters reside in and formerly received public assistance from the State of New Hampshire. Mother resides in Virginia. In 1996, pursuant to the UIFSA, New Hampshire filed a support petition with the Commonwealth requesting the issuance of a support order against mother for the support of her two children and requesting an order of reimbursement for public assistance paid to father on behalf of the children in New Hampshire while mother was residing in Virginia. The parties stipulate that the amount of assistance paid to father was $9,023.50.

The Juvenile and Domestic Relations District Court for Isle of Wight County entered an order requiring mother to pay child support. That order was not appealed. The Commissioner of the Department of Social Services administratively ordered mother to reimburse New Hampshire for the public assistance paid to father. Mother appealed the administrative order to the Juvenile and Domestic Relations District Court for the City of Norfolk, which vacated the administrative order. DSS appealed that decision to the Circuit Court for the City of Norfolk, and

the circuit court also vacated the administrative order.  DSS now appeals this adverse ruling.

     The UIFSA is a model uniform law that has been enacted in all fifty states.  See Code § 20-88.32 et seq.  It provides a comprehensive statutory scheme to establish and enforce support obligations in proceedings involving two or more states.  In this case, the Commonwealth, as a "responding tribunal," received a petition from the State of New Hampshire, the "initiating tribunal."  A "tribunal" is defined as "a court, administrative agency, or quasi-judicial entity authorized to establish, enforce, or modify support orders or to determine parentage."  Code § 20-88.32.  Pursuant to Code § 20-88.48, the responding tribunal is authorized, inter alia, to "issue or enforce a support order" and to "[d]etermine the amount of any arrearages, and specify a method of payment."  By definition, "support order" "means a judgment, decree, or order, whether temporary, final, or subject to modification, for the benefit of a child, a spouse, or a former spouse, which provides for monetary support, health care, arrearages, or reimbursement . . . . "  Code § 20-88.32 (emphasis added).  An "obligee" is "a state or political subdivision to which the rights under a duty of support or support order have been assigned or which has independent claims based on financial assistance provided to an individual obligee."  Code § 20-88.32.  "Duty of support" "means an obligation imposed or imposable by law to provide support for

a child, spouse, or former spouse, including an unsatisfied obligation to provide support."  Code § 20-88.32.

Under New Hampshire law, the receipt of public assistance constitutes an assignment of all rights and interest in the support obligation up to the amount of public assistance money paid for or on behalf of the children.  See N.H. Rev. Stat. Ann. § 161-C:22 (1998).  Additionally, New Hampshire law states that "any payment of public assistance made to or for the benefit of a dependent child creates a debt due and owing to the department by any responsible parent."  N.H. Rev. Stat. Ann. § 161-C:4 (1998).  Consequently, the State of New Hampshire is an obligee as defined by Code § 20-88.32.[1]

The definitions of "obligee," "support order," and "duty of support" in UIFSA anticipate states sending petitions to each other seeking reimbursement from obligors for public assistance paid to their families.  Furthermore, when a court or agency of the Commonwealth acts as a "responding tribunal," it "shall apply the procedural and substantive law, including the rules on choice of law, generally applicable to similar proceedings originating in this Commonwealth and may exercise all powers and

_____

[1] The official comments to the UIFSA explain that while "obligee" usually refers to the individual receiving the payments, it "may be a support enforcement agency which has been assigned the right to receive support payments in order to recoup Temporary Assistance for Needy Families (TANF), 42 U.S.C. § 601 et seq., formerly known as Aid to Families with Dependent Children (AFDC)."  Unif. Interstate Family Support Act (1996) § 101, 9 U.L.A. 259 (1999).

remedies available in those proceedings."  Code § 20-88.46.
These remedies are "cumulative and do not affect availability of
remedies under other law."  Code § 20-88.34.

According to Virginia law, "[a]ny payment of public
assistance money made to or for the benefit of any dependent
child or children or their caretaker creates a debt due and
owing to the Department by the person or persons who are
responsible for support of such children or caretaker in an
amount equal to the amount of public assistance money so paid."
Code § 63.1-251; see also Powers v. Commonwealth, 13 Va. App.
309, 411 S.E.2d 230 (1991).  "'Department' means the State
Department of Social Services."  Code § 63.1-250.  It is well
settled that both parents owe a duty of support to their child.
See Commonwealth v. Johnson, 7 Va. App. 614, 376 S.E.2d 787
(1989).

A cursory examination of this section would appear to
confine its application only to actions where the Virginia
Department of Social Services provided public assistance.
However, the "Definitions" provision of Code § 63.1-250 is
preceded by "[u]nless a different meaning is plainly required by
the context, the following words and phrases as hereinafter used
in this chapter shall have the following meanings."  Under
UIFSA, "state" means, inter alia, "a state of the United
States."  Consequently, in the context of a petition under UIFSA

for the determination of the existence of a public assistance debt, the word "state" means "any state."

We hold that by adoption of UIFSA the General Assembly intended to permit Virginia to determine the existence of a public assistance debt owed to another state.

> In the construction of its provisions, it is to be remembered that the Code itself is a single act of the legislature. "The different sections should be regarded, not as prior and subsequent acts, but as simultaneous expressions of the legislative will." All provisions there appearing which deal with the same subject should be construed together and reconciled whenever possible.
>
>    *     *     *     *     *     *     *
>
> We do not search through the history of statutes for difficulties not patent on their face, but take them first as they are written into the Code itself. If when so read they are reasonably clear, that suffices.

Shepherd v. F.J. Kress Box Co., 154 Va. 421, 425-26, 153 S.E. 649, 650 (1930) (citations omitted). "Moreover, it is a familiar rule of statutory construction that subsequent legislation is enacted in light and with knowledge of such interpretive statutes, and hence the latter control unless there be clear legislative intent to substitute a different interpretation." Alphonse Custodis Chimney Constr. Co. v. Molina, 183 Va. 512, 515, 32 S.E.2d 726, 727 (1945) (citation omitted).

Further, when possible, statutes must be read in a manner that achieves the beneficial purpose intended by their enactment. "A statute must be construed 'to give reasonable effect to the words used' and to further its remedial purposes." Commonwealth v. Wallace, 29 Va. App. 228, 233, 511 S.E.2d 423, 425 (1999) (quoting Mayhew v. Commonwealth, 20 Va. App. 484, 489, 458 S.E.2d 305, 307 (1995)). "Proper construction seeks to harmonize the provisions of a statute both internally, and in relation to other statutes." Id. (citations omitted). We wrote in Wallace:

> The words chosen by the legislature in drafting a statute derive meaning from both definition and context and, therefore, we divine legislative intent by construing an enactment as a whole, together with companion statutes, if any. The legal maxim, noscitur a sociis, instructs that "a word takes color and expression from the purport of the entire phrase of which it is a part, and . . . must be read in harmony with its context." Turner v. Commonwealth, 226 Va. 456, 460, 309 S.E.2d 337, 339 (1983). Similarly, legislative purpose can best be "'ascertained from the act itself when read in the light of other statutes relating to the same subject matter.'" Moreno v. Moreno, 24 Va. App. 190, 197, 480 S.E.2d 792, 796 (1997). The doctrine of pari materia teaches that "'statutes are not to be considered as isolated fragments of law, but as a whole, or as parts of a great, connected homogenous system, or a simple and complete statutory arrangement.'" Id. at 198, 480 S.E.2d at 796.

29 Va. App. at 233-34, 511 S.E.2d at 425.

Had Virginia paid the AFDC funds, a debt due and owing DSS would have been created as a matter of law.  See Code § 63.1-251.  Since UIFSA requires the uniform application of Virginia laws to interstate petitions, New Hampshire is entitled to the benefit of Virginia law allowing the creation by law of a debt for provision of AFDC funds.  To hold otherwise would defeat the clear purpose of the statute and, therefore, be inconsistent with the manifest intention of the General Assembly.

Under UIFSA, an out-of-state petitioner (in this case, the State of New Hampshire) is entitled to the application of Virginia law in the same manner as an in-state petitioner.  It would be incongruous that no debt would be created in favor of the providing agency if the agency is out of state while a debt is created if the providing agency is the Commonwealth of Virginia, particularly when the source of the funds, namely AFDC, is the same.

Because the matter is not before us, we do not address whether the juvenile and domestic relations district court would also have been a proper "tribunal" for the original petition for reimbursement of public assistance funds.  We hold that an administrative proceeding in the Department of Social Services is a proper tribunal for receipt of a petition under UIFSA for the provision of an order of support, including reimbursement of AFDC funds provided by another state.  Accordingly, we reverse

the order of the trial court and remand for proceedings consistent with this opinion.

Reversed and remanded.