COURT OF APPEALS OF VIRGINIA

Present:   Judges Benton, Elder and Beales
Argued at Alexandria, Virginia


BRADLEY AARON DAVID NORDSTROM

v.      Record No. 2303-06-4

SUSAN MARIE NORDSTROM, n/k/a
  SUSAN MARIE SCOTT

OPINION BY
JUDGE LARRY G. ELDER
AUGUST 21, 2007


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Gaylord L. Finch, Jr., Judge

Michael C. Miller (Law Office of Maddox, Cole & Miller, P.C., on
brief), for appellant.

No brief or argument for appellee.


Bradley Aaron David Nordstrom (father) appeals from an order granting the motion of

his former wife, Susan Marie Scott (mother), for modification of his support obligation for the

parties' minor child.  On appeal, father contends the trial court erroneously determined it had

jurisdiction under Virginia's version of the Uniform Interstate Family Support Act, Code

§§ 20-88.32 to -88.82, to modify the Virginia order when neither the parents nor the child

continued to reside in Virginia.  He also seeks an order of restitution for what he contends are

overpayments of child support made pursuant to the erroneous order, and he requests an award of

attorney's fees and costs on appeal.  We hold the court lacked jurisdiction to modify.  Thus, we

vacate the order modifying child support and dismiss mother's motion requesting modification.

We decline father's request for an award of attorney's fees and costs.

## BACKGROUND

By order of May 19, 2004, the trial court determined father's support obligation payable to mother for the parties' child. That order stated that mother and the child resided in Charles Town, West Virginia. At that time, father, who was in the military, had an address of residence in Miami, Florida. Sometime following entry of that order, father received orders for duty in Germany and was thereafter deployed to Iraq.

On May 18, 2006, mother, acting *pro se*, filed a motion to modify child support alleging a material change in circumstances. In that motion, mother indicated her residence was in Charles Town, West Virginia. By motion filed June 30, 2006, father moved to dismiss. He alleged that at the time mother filed her motion in 2006, mother, father, and the child all resided outside Virginia and, thus, that under Code § 20-88.39(A) the trial court lacked continuing, exclusive jurisdiction to modify the child support order absent the consent of the parties in the record. At a hearing on July 7, 2006, the trial court denied father's motion to dismiss and continued the matter to August 17, 2006, for the presentation of evidence on the motion to modify. In denying the motion to dismiss, the court reasoned that it had long arm jurisdiction pursuant to Code § 8.01-328.1(8) "whereby the Court retains personal jurisdiction over [father] despite his current residency." It also held that, under Code § 20-88.39, it "continue[d] to have concurrent jurisdiction to modify its support orders until another Court of competent jurisdiction takes or assumes jurisdiction from this Court, which has not happened."

Father then filed a motion for reconsideration of the court's ruling on jurisdiction. He argued the court lacked personal jurisdiction over him pursuant to either Code § 8.01-328.1(8) or § 20-88.36. He also argued the court erroneously held Code § 20-88.39 provided it with "concurrent jurisdiction to modify its support order until another Court of competent jurisdiction

takes or assumes jurisdiction from this Court, which has not happened." Father noted the applicable version of Code § 20-88.39 contains no such provision.

At the August 17, 2006 hearing, father again argued his motion to dismiss for lack of jurisdiction, and the trial court said, "I think it's ambiguous as to modification. You show me in there where it says we're divested of jurisdiction to modify. . . . I think that would just go completely counter to the intention of the act." The court inquired what state father contended would have jurisdiction to modify, and father mentioned the possibility of West Virginia, where mother and the child lived, or Texas, which was father's state of legal residence. The trial court then said, "We'll just go ahead and do it here."

On that same date, the court entered an order again denying father's motion to dismiss. It ruled as follows:

> IT APPEAR[S] to the Court that the Motion to Dismiss was properly denied because the Court continues to exercise personal jurisdiction over [father] under this Court's continuing jurisdiction to enforce the current child support Order (*See* Virginia Code §§ 20-88.36 and 20-88.40);
>
> IT FURTHER APPEAR[S] to the Court that this Court has jurisdiction to modify the current support Order because although the Court no longer appears to have continuing, *exclusive* jurisdiction, the Court does have continuing jurisdiction to modify its Order; nor is this Court prohibited from exercising jurisdiction to modify under Virginia Code § 20-88.39 . . . .

It also entered an order granting mother's motion for an increase in child support.

Father made specific objections to the support order and noted this appeal.

II.

ANALYSIS

A.

TRIAL COURT'S JURISDICTION TO MODIFY
AND PERSONAL JURISDICTION

Virginia has adopted the Uniform Interstate Family Support Act (UIFSA) and has codified it, with minor amendments, at Code §§ 20-88.32 to 20-88.82. UIFSA is a model uniform law that has been enacted in all fifty states. Commonwealth ex rel. Gagne v. Chamberlain, 31 Va. App. 533, 536, 525 S.E.2d 19, 21 (2000). Its recognized purpose is to "provide[] a comprehensive statutory scheme to establish and enforce support obligations in proceedings involving [residents of] two or more states." Id. at 536-37, 525 S.E.2d at 21. Each section of the uniform law is accompanied by an official comment that explains the purpose and application of the section. See UIFSA (2001), 9 U.L.A. (pt. 1B) 159-270 (2005). Although the General Assembly has not formally adopted any of the official comments in conjunction with its adoption of UIFSA's various provisions, we have previously recognized that UIFSA's official comments are an appropriate aid in determining how Code §§ 20-88.32 to -88.82 apply in a given case. See, e.g., Chamberlain, 31 Va. App. at 537 n.1, 525 S.E.2d at 21 n.1.

The version of UIFSA § 205, 9 U.L.A. (pt. 1B) 339-40 (1992 & 1996), applicable in Virginia from 1994 to 2005, codified at § 20-88.39, defined a court's "continuing, exclusive jurisdiction" as follows:

> A. A tribunal of this Commonwealth issuing a support order consistent with the law of this Commonwealth has continuing, exclusive jurisdiction over a child support order:
>
> 1. As long as this Commonwealth remains the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued; or

> 2. Until all of the parties who are individuals have filed written consent with a tribunal of this Commonwealth for a tribunal of another state to modify the order and assume continuing, exclusive jurisdiction.[1]

1997 Va. Acts, chs. 797, 897 (codified at § 20-88.39 (2000 Repl. Vol.)) (footnote added); see also Commonwealth ex rel. Kenitzer v. Richter, 23 Va. App. 186, 190, 475 S.E.2d 817, 819 (1996) (discussing purpose and evolution of Uniform Reciprocal Enforcement of Support Act (URESA), Revised Uniform Reciprocal Enforcement of Support Act (RURESA), and their replacement by UIFSA, which offered as "'the most significant improvement . . . the elimination of the multiple-order system'" (quoting John J. Sampson & Paul M. Kurtz, UIFSA: An Interstate Support Act for the 21st Century, 27 Fam. L.Q. 85, 88 (1993))). Thus, under the version of Code § 20-88.39 applicable from 1994 to 2005, if, after a Virginia court issued a child support order, the parties and the child left the state and took up residence elsewhere, the Virginia court retained continuing, *exclusive* jurisdiction to modify that order *until* all parties consented in writing to allow another state to assume continuing, exclusive jurisdiction to modify the order.

Effective July 1, 2005, the General Assembly adopted the amended version of UIFSA § 205, revised in 2001, see 9 U.L.A. (pt. 1B) 192-93 (2001), which provided as follows with regard to modification:

> A. A tribunal of the Commonwealth that has issued a child support order consistent with the law of the Commonwealth has and shall exercise continuing, exclusive jurisdiction to modify its child support order if the order is the controlling order, and:

> 1. At the time of the filing of a request for modification, the Commonwealth is the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued; or

---

[1] The original language in subsection (A)(2), "Until each individual party has filed," see 1994 Va. Acts, ch. 673, was amended in 1997 to read, "Until all of the parties who are individuals have filed," see 1997 Va. Acts, chs. 797, 897.

2. Even if the Commonwealth is not the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued, the parties consent in a record that the tribunal of the Commonwealth may continue to exercise its jurisdiction to modify its order.

2005 Va. Acts, ch. 754 (codified at § 20-88.39 (2004 Repl. Vol. & Supp. 2006)). Code § 20-88.41 provides that if, when "a proceeding is brought under this chapter," "only one tribunal has issued a child support order, the order of that tribunal controls" and is considered "the controlling order."

Here, the record indicates that when mother requested modification in 2006, the trial court's 2004 order was the only child support order in existence and, thus, was the controlling order. Accordingly, the trial court had continuing, *exclusive* jurisdiction to modify that order if the requirements of subsection (A)(1) or (2) were satisfied. Subsection (A)(1) did not apply because, at the time of the 2006 request for modification, the obligor, the obligee, and the child all resided outside Virginia. Subsection (A)(2) also did not apply because father did not "consent in [the] record that [the trial court] may continue to exercise its jurisdiction to modify its order." Code § 20-88.39(A)(2) (2004 Repl. Vol. & Supp. 2006). Thus, as the trial court expressly found, it lacked continuing, exclusive jurisdiction to modify the order.

The trial court nevertheless stated its belief (1) that it had continuing subject matter jurisdiction to modify the order, even though its continuing jurisdiction was not *exclusive*, because Code § 20-88.39 did not expressly divest it of such jurisdiction, and (2) that it retained such authority "until another Court of competent jurisdiction takes or assumes jurisdiction from this Court, which has not happened." These conclusions were erroneous.

As set out above, the version of Code § 20-88.39 in effect from 1994 to 2005 provided that a court issuing a child support order retained continuing, *exclusive* jurisdiction to modify that order *until* the parties consented in writing to allow another state to assume continuing,

- 6 -

exclusive jurisdiction to modify the order.  The version of Code § 20-88.39 applicable since

2005, however, contains no such provision and, in fact, provides to the contrary, as recognized

by the official comment to UIFSA § 205:

> A substantive change is made by the 2001 amendment that
> adds entirely new language to Subsection (a)(2). . . .
>
> . . . Just as Subsection (a) defines the retention of
> continuing, exclusive jurisdiction, *by clear implication the
> subsection also identifies how jurisdiction to modify may be lost.
> That is, if all the relevant persons--the obligor, the individual
> obligee, and the child--have permanently left the issuing State, the
> issuing State no longer has an appropriate nexus with the parties
> or child to justify the exercise of jurisdiction to modify its
> child-support order*.  Further, the issuing tribunal has no current
> information about the factual circumstances of anyone involved,
> and the taxpayers of that State have no reason to expend public
> funds on the process.

UIFSA § 205 cmt. (2001), 9 U.L.A. (pt. 1B) 194 (2005) (citations omitted) (emphasis added).

As the official comment makes clear, Code § 20-88.39 provides that when a court loses

continuing, exclusive jurisdiction over its prior child support order, it has no subject matter

jurisdiction to modify that order.

It is true that the trial court retained continuing jurisdiction to *enforce*, as opposed to

modify, the order pursuant to Code § 20-88.40.  Continuing jurisdiction to enforce need not be

exclusive jurisdiction.  UIFSA § 206 cmt. (2001), 9 U.L.A. (pt. 1B) 196 (2005) (recognizing

UIFSA § 206 dealing with enforcement "is correlative of the continuing, exclusive jurisdiction

asserted in [§ 205]" and "makes the relatively subtle distinction between the [continuing,

exclusive jurisdiction] 'to modify a support order' established in Section 205 and the 'continuing

jurisdiction to enforce' established in [§ 206]").  It is also true that the court retained personal

jurisdiction to enforce the order pursuant to Code § 20-88.36, which provides that:

> Personal jurisdiction acquired by a tribunal of this Commonwealth
> in a proceeding under this chapter or other law of the
> Commonwealth relating to a support order continues as long as a

- 7 -

tribunal of the Commonwealth has continuing, exclusive
jurisdiction to modify its order or continuing jurisdiction to enforce
its order as provided by §§ 20-88.39, 20-88.40 and 20-88.43:2.

2005 Va. Acts, ch. 754 (codified at § 20-88.36 (2004 Repl. Vol. & Supp. 2006)).  However,

because the trial court was required to have subject matter jurisdiction for the modification,

defined by Code § 20-88.39 as continuing, *exclusive* jurisdiction, whether Code § 20-88.36

granted the trial court personal jurisdiction over father for purposes of *modifying* the order was

irrelevant.  For the reasons already discussed, the court lacked continuing, *exclusive* jurisdiction

over the order, and any authority of the trial court to exercise personal jurisdiction over father did

nothing to remedy the lack of subject matter jurisdiction to modify.

B.

REMEDY

Father asks that mother be required to "reimburse [him] all monies paid over the amount

of the child support obligation existing in May 2006 when this matter started."  We have

previously held that a trial court has no statutory or inherent authority to order restitution of child

support paid pursuant to an erroneous order.  See Wilson v. Wilson, 25 Va. App. 752, 760, 492

S.E.2d 495, 499 (1997) (reaching such a conclusion in dicta, based on Reid v. Reid, 245 Va. 409,

415, 429 S.E.2d 208, 211 (1993) (involving request for restitution of spousal support paid under

order later declared erroneous)).  These principles apply with even greater force where, as here,

the order was void due to a lack of subject matter jurisdiction.  Thus, we deny the request based

on a lack of authority to grant the requested relief.[2]

---

[2] The holding in Hughes v. Hughes, 173 Va. 293, 306, 4 S.E.2d 402, 407 (1939), cited in
the concurring and dissenting opinion, does not authorize an award of restitution or credit under
the facts of this case.  Hughes involved a husband's voluntary payments of irregular amounts of
spousal and child support, payments that were made prior to the entry of any support order and
not pursuant to an order later declared erroneous or void.  Id. at 304, 4 S.E.2d at 407.  The
Supreme Court held the trial court abused its discretion in "refus[ing] to allow the wife either
temporary or permanent alimony" and remanded with instructions to make an award of same

C.

ATTORNEY'S FEES AND COSTS

Father seeks an award of attorney's fees and costs on appeal and asks that we instruct the trial court to make such an award on remand. We decline father's request.

Although father prevailed on appeal, he did so on procedural grounds. Further, given father's active-duty military status and the fact that he was stationed in Germany and deployed to Iraq when these proceedings began, nothing in the record indicates that mother could reasonably have chosen a different forum in which to proceed that would have been more convenient for father without significant inconvenience and expense to herself. Mother clearly knew father would be out of the country when she filed her petition to modify because the primary basis for the original petition was the fact that father would not, based on his new orders, be able to exercise visitation for "at least two years." Mother, who was proceeding *pro se*, filed for relief in the only state that had ever exercised jurisdiction over the child support issue, and which would still, under the version of the Code amended by the General Assembly only a year earlier, have had jurisdiction to modify. Representations made to the trial court indicated that father still had counsel in Virginia on retainer, and nothing in the record indicated that mother's filing in Texas, father's official state of residence, or West Virginia, the state of residence of mother and the child, would have been any more convenient for father. Nevertheless, father chose not to

---

subject to "credit for any . . . sums [the husband] may have theretofore paid his wife." Id. at 304, 306, 4 S.E.2d at 407. Thus, Hughes did not authorize an order of restitution, and it ordered an award of credit under a different factual scenario, one in which the payments had been made voluntarily rather than pursuant to a void or erroneous order.

We believe the Virginia Supreme Court decision most closely analogous to the instant case is the more recently decided Reid, 245 Va. at 415, 429 S.E.2d at 211, cited in the text, and that, pursuant to Reid, as further interpreted in Wilson, 25 Va. App. at 760, 492 S.E.2d at 499, we lack authority to order restitution. Whether it would be appropriate to award a credit toward any future support that may be ordered is not before us. This opinion is not intended to preclude father from pursuing, in a proceeding separate from this appeal, any forms of relief to which he might be entitled.

consent to have the trial court exercise jurisdiction to modify, as he could have done under Code § 20-88.39(A)(2).

Under these circumstances, we decline father's request for an award of fees incurred on appeal.  See, e.g., O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996).

### III.

For these reasons, we hold the trial court lacked subject matter jurisdiction to modify the existing child support order.  Thus, we vacate the order modifying child support and dismiss the underlying motion.  We decline father's request for an award of attorney's fees and costs.

Vacated and dismissed.

Benton, J., concurring, in part, and dissenting, in part.

I concur in the opinion, except for Part "II. B.," styled "Remedy."

As the majority opinion holds, the trial judge had no power to enter an order modifying the father's child support payments. Therefore, the order was void.

> An order is void *ab initio* if entered by a court in the absence of jurisdiction of the subject matter or over the parties, if the character of the order is such that the court had no power to render it, or if the mode of procedure used by the court was one that the court could "not lawfully adopt." Evans v. Smyth-Wythe Airport Comm'n, 255 Va. 69, 73, 495 S.E.2d 825, 828 (1998) (quoting Anthony v. Kasey, 83 Va. 338, 340, 5 S.E. 176, 177 (1887)). The lack of jurisdiction to enter an order under any of these circumstances renders the order a complete nullity and it may be "impeached directly or collaterally by all persons, anywhere, at any time, or in any manner." Barnes v. Am. Fertilizer Co., 144 Va. 692, 705, 130 S.E. 902, 906 (1925).

Singh v. Mooney, 261 Va. 48, 51-52, 541 S.E.2d 549, 551 (2001) (footnote omitted). See also Watkins v. Watkins, 220 Va. 1051, 1054, 265 S.E.2d 750, 752-53 (1980).

The father has requested a remand with instructions to the trial judge to order the mother to "reimburse" him for the payments he was directed to make under the void order. This is a feasible remedy because the circuit court retains continuing jurisdiction to initiate enforcement of the existing support order. See Code §§ 20-88.40 and 20-88.43:2. Furthermore, I would hold that the remedy in this case is not limited by Reid v. Reid, 245 Va. 409, 429 S.E.2d 208 (1993), where the judge's actions were within his authority but erroneous, and, therefore, merely voidable. "The distinction between an action of the court that is void *ab initio* rather than merely voidable is that the former involves the underlying authority of a court to act on a matter whereas the latter involves actions taken by a court which are in error." Singh, 261 Va. at 51, 541 S.E.2d at 551. Because the support judgment entered by the trial judge in this case is void, it conferred no rights on the mother and no obligations on the father.

For these reasons, I would hold the father is entitled to an order restoring the *status quo ante* and, therefore, is entitled to either restitution of money he was required to pay under the void order or a credit for this amount toward his continuing support obligation. See Hughes v. Hughes, 173 Va. 293, 306, 4 S.E.2d 402, 407 (1939) (reversing a judgment and ordering the trial judge to credit husband for sums he may have paid for support during pendency of litigation).