IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 23, 2008 Session

## STATE OF TENNESSEE *EX REL.* MICHELLE STRICKLAND
v.
## TERRY COPLEY

### Appeal from the Circuit Court for Gibson County
### Nos. S0307 and 8067      Clayburn Peeples, Judge

### No. W2007-01839-COA-R3-CV  - Filed August 21, 2008

This appeal arises from post-divorce proceedings involving child support obligations. The original divorce and support orders were entered in Michigan. The mother subsequently moved to North Carolina, and the child support order was transferred to that state. The father moved to Tennessee and became delinquent in making his support payments. The mother began to receive public assistance and executed an income assignment assigning to North Carolina the right to receive the back child support owed by the father. Upon request by North Carolina, Tennessee then brought suit to enforce the North Carolina order. In the Tennessee proceedings, the trial court changed custody from the mother to the father and ordered the mother to pay the father child support. In the process, the trial court determined that the mother owed back child support to the father and then used this amount to setoff the obligation owed by the father to North Carolina. For the reasons stated herein, we determine that a setoff cannot be used to deprive North Carolina of recoupment of its public assistance. The judgment below allowing the setoff is therefore vacated, and this case is remanded for further proceedings consistent with this opinion.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded

WALTER C. KURTZ, SR. J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Robert E. Cooper, Jr., Attorney General and Reporter, and Warren A. Jasper, Assistant Attorney General, for the appellant, State of Tennessee *ex rel.* Michelle Strickland.

Gregory W. Minton and Brandon L. Newman, Trenton, Tennessee, for the appellee, Terry Copley.

**OPINION**

**I. BACKGROUND**

When a parent under a judicially decreed obligation to make child support payments to the custodial parent fails to do so and the custodial parent then receives public assistance, the state paying the benefits may obtain and enforce an income assignment granting to it the power to collect and retain the delinquent child support payments. *See, e.g., State ex rel. Mitchell v. Johnson*, No. M2002-00231-COA-R3-CV, 2003 WL 22251335 (Tenn. Ct. App. Oct. 2, 2003); *Butler v. State ex rel. Butler*, No. W2001-01137-COA-R3-CV, 2002 WL 31845233 (Tenn. Ct. App. Dec. 18, 2002). These proceeds then typically belong to the state and are meant to compensate it for the fact that the custodial parent has required public assistance during a time in which the other parent was delinquent. *See generally* 79 Am. Jur. 2d *Welfare* § 81 (2008) ("Generally a custodial parent assigns his or her rights to past, current, and future child support payments, including arrearages, to the state in exchange for receiving public assistance."). When the two parents reside in different states, the state which is owed this money has the authority to ask the state in which the other parent resides to bring an action for collection of back child support on its behalf. 24A Am. Jur. 2d *Divorce and Separation* § 1193 (2008) (discussing Uniform Interstate Family Support Act); *see* Tenn. Code Ann. § 71-3-124(a)(4).

In this appeal we consider the contention of the state of Tennessee (State) that a decision of the Circuit Court for Gibson County has impermissibly interfered with its ability to enforce a North Carolina court's orders assigning North Carolina the right to collect child support payments pursuant to the Uniform Interstate Family Support Act (UIFSA). *See* Tenn. Code Ann. §§ 36-5-2001 *et seq.* We conclude that the Circuit Court erred. We therefore vacate its decision and remand for further proceedings.

**A.**

Terry Copley and Michelle Copley (now Ms. Strickland) were granted a divorce in the state of Michigan in 1993. Ms. Strickland was awarded custody of their two minor children, and Mr. Copley was ordered to pay child support. Ms. Strickland moved to North Carolina in 1997, and administration of the case was transferred from Michigan to North Carolina.

When Mr. Copley ceased to comply with his child support obligations, Ms. Strickland began to receive public assistance. By an order of March 22, 2001, the District Court for Carteret County, North Carolina set Mr. Copley's arrears at $19,821.03 (as of February 23, 2001). It also made the state of North Carolina a party to the case and designated North Carolina Child Support Centralized Collections as the proper payee of any payments from Mr. Copley. At some point Mr. Copley had moved to Gibson County, Tennessee, and one of his children eventually came to reside with him.[1] Given this de facto change in custodial arrangements, the North Carolina Support Enforcement

---

[1] While the dates are not disclosed in the record, it appears that Mr. Copley also became disabled and began to receive Social Security Disability benefits.

Agency (Support Agency) apparently began to prorate the child support he owed and compute the arrearage based on only one child.

In October 2002 the Support Agency transmitted a UIFSA request to Tennessee. The State thus brought proceedings in the Circuit Court for Gibson County to enforce the North Carolina order.[2] At the hearing on this issue, the trial court found that Mr. Copley was in arrears in the amount of $27,668.00 (as of July 6, 2003). Mr. Copley was ordered to pay child support and to make payments in order to liquidate his arrears. Mr. Copley belatedly filed his answer in this case in January 2006. He also then requested that he be designated as the custodial parent of the child living with him and further that he be awarded child support.

According to the State, at roughly the same time as these proceedings, the court in North Carolina revisited the question of the amount owed by Mr. Copley; it maintains that the North Carolina court then found that Mr. Copley owed $27,779.95 (as of August 1, 2004).[3] The State says Mr. Copley was ordered by the North Carolina court to pay $100.00 per month on this arrearage. The State has therefore sought to enforce this order for North Carolina as well. A hearing on this issue in Gibson County was continued several times.

## B.

A new case was filed in the Circuit Court for Gibson County in March 2005. This time, however, it was initiated by Mr. Copley against Ms. Strickland. The petition filed by Mr. Copley sought to modify their divorce decree to award him custody of both of their children. Mr. Copley moved for a default judgment in his case and also asked for the court to set child support. The trial court heard his motion for default on August 1, 2005 and entered an order of default judgment on February 27, 2006. The court awarded him full custody of both of his minor children and set child support. For the older child, it was set as of July 2, 2004; for the younger, it was set as of March 9, 2005. The total amount of retroactive child support due from Ms. Strickland was found to be $12,891.00. Based upon a presumptive income of $26,480.00, current child support was set at $756.00 per month beginning March 1, 2006. A parenting plan was also entered.

On April 20, 2007, Mr. Copley filed a motion requesting a determination of the arrearage owed to him by Ms. Strickland. He further requested that his obligation be setoff by the amount determined to be owed by her. The State filed opposition to this motion and argued that allowing Mr. Copley's child support arrears to be setoff by Ms. Strickland's would deny the State its ability to collect the portion of Mr. Copley's child support arrearage owed to North Carolina and would violate the principles of Tenn. Code Ann. § 36-5-101(f)(1). Shortly thereafter the State filed a motion asking the trial court to set aside the portions of its order granting Mr. Copley's default judgment and the parenting plan under which Ms. Strickland was to pay child support to Mr. Copley.

---

[2] The Tennessee Department of Human Services had the authority to do this under Tenn. Code Ann. § 71-3-124(a)(1) and (4).

[3] This North Carolina order is referenced by the State in its brief, but it is not part of the record.

The State took the position that the trial court lacked personal jurisdiction over Ms. Strickland and lacked subject matter jurisdiction over the issue of child support since the matter was registered in Tennessee pursuant to the UIFSA for enforcement only.

By an order signed July 12, 2007, the trial court held that the children were residents of the state of Tennessee and that they were properly before the court. It further found that service was properly made on Ms. Strickland and the default judgment properly rendered. The trial court denied the motion to set aside its orders regarding child support payments. It held that the arrearages claimed by Ms. Strickland from Mr. Copley should be setoff by the arrearages owed by her to him. Ms. Strickland's arrearages were, according to the trial court, asserted strictly on her behalf and did not represent any benefits owed to the states of North Carolina or Michigan. In the trial court's order, it made the following relevant findings:

> That the arrearages claimed by the Respondent are not contested . . . [but they are]. . . now offset by arrearages owed by the Respondent to the Petitioner for support and maintenance of the same minor children.

> That it would be contrary to the best interests of the minor children for the Court not to enforce its own judgment for child support, including arrearages.

> That arrearages as of the date of this hearing owed to the Petitioner by the Respondent are $25,964.00.

> That all arrearages asserted by the Respondent, as is evidenced by the North Carolina judgment and levee[,] were asserted strictly on behalf of the Respondent and did not represent any benefits owed to the State of North Carolina or the State of Michigan.

The State timely filed a notice of appeal. It contends that the effect of the setoff is to deny North Carolina its opportunity to recoup the monies it had paid for public assistance when Mr. Copley was not complying with his child support obligations.

## II. ISSUES PRESENTED

The State and Mr. Copley differ somewhat in their views of the issues. The State contends that there are two issues here:

> I. Whether the trial court was correct to offset competing child support orders.

> II. Whether the trial court was correct to do so when the State's ability to recoup social benefits is prejudiced.[4]

In contrast, Mr. Copley states the issues as follows:

---

[4] The Court assumes that the State's reference to "social benefits" means public assistance.

I. The State lacks standing to challenge personal jurisdiction and subject matter jurisdiction on behalf of [Ms. Strickland] in [an] action to which the State is not a party, and in which its interest is merely collateral.

II. Subject matter jurisdiction and personal jurisdiction were valid in this case pursuant to Tennessee's UCCJEA statute, and Tennessee's exclusive, continuing jurisdiction.

III. The trial court's decision to offset child support arrearages owed by Mr. Copley to [Ms. Strickland] with arrearages owed to Mr. Copley by [Ms. Strickland] is valid, despite the State's attempt to claim these arrearages as recoupment for public assistance benefits.

Mr. Copley frames the case in his brief by commenting that "[p]ractically speaking, were this Court to reverse the trial court, Mr. Copley would be forced to pay the arrearages and then locate Ms. Strickland to collect the Tennessee judgment for her arrears[.]"

We are inclined to agree with Mr. Copley that the State does not have standing to contest the change in custody. The State does have standing, however, to litigate the issue of whether a setoff can be used to deprive North Carolina of its ability to recover the monies it has paid to Ms. Strickland. The Court, therefore, is of the opinion that the issue to be resolved is whether the setoff is lawful under the circumstances of this case.

## III. DISCUSSION

It is important to separate the issue of custody from that of child support. A recent case explains:

> Interstate jurisdictional questions involving child support and arrearage matters are governed by the Uniform Interstate Family Support Act ("UIFSA"), Tenn. Code Ann. § 36-5-2001 *et seq.* Proceedings to determine parentage are also governed by the UIFSA. Tenn. Code Ann. § 36-5-2301(a)(6) and 2701. Interstate jurisdictional questions involving custody and visitation, on the other hand, are governed by the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), Tenn. Code Ann. § 36-6-201 *et seq.*

*In re J.B.W.*, No. M2007-02541-COA-R9-CV, 2007 WL 4562885, at *1 (Tenn. Ct. App. Dec. 27, 2007), *perm. app. denied* (Tenn. April 7, 2008). It is further recognized that these two uniform acts—one governing child support and the other governing child custody and visitation—can create "parallel proceedings in different states" which can in turn potentially lead to the "awkward" and unsatisfactory severance of custody from child support. *Straight v. Straight*, 195 S.W.3d 461, 466-67 (Mo. Ct. App. 2006).

The UIFSA is a complex statute, but it is designed to prevent the occurrence of competing multistate support orders; thus, the ability of one state to modify the prior order of another is

extremely limited. *See LeTellier v. LeTellier*, 40 S.W.3d 490 (Tenn. 2001); *Cliburn v. Bergeron*, Nos. M2002-01386-COA-R3-CV and M2001-03157-COA-R3-CV, 2002 WL 31890868 (Tenn. Ct. App. Dec. 31, 2002); *see generally* Kurtis A. Kemper, Annotation, *Construction and Application of Uniform Interstate Family Support Act*, 90 A.L.R.5th 1 (2001 & Supp. 2006).

The enforcement and application of the UIFSA could involve this Court in a legal morass unless we keep ourselves focused on the limited issue presented by this case. To do so, we must make clear what this case does not involve. Mr. Copley did not contest the fact that he owes back child support to North Carolina. And, while the State has contested the authority of the Gibson County Circuit Court to change custody and order Ms. Strickland to pay child support, the State lacks standing to make these assertions.[5] The North Carolina order is for arrearages, not ongoing support. Only Ms. Strickland can assert that Tennessee courts lack jurisdiction to change custody and award her ex-husband child support. The State's interest here is far narrower. Its interest only relates to whether the efforts to collect past due child support can be thwarted by the trial court's use of a setoff. There is no need for this Court to determine whether or not the Gibson County Circuit Court had jurisdiction to modify a prior court's custody order. In their briefs both the State and Mr. Copley have engaged in extensive discussions of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), Tenn. Code Ann. § 36-6-201, but it is unnecessary to resolve that issue.

The trial court found in its order that the arrearages reflected in the North Carolina judgment do not represent benefits owed to the state of North Carolina. The record does not support such a determination. In fact, the North Carolina order of March 22, 2001 specifically states that the North Carolina Department of Health and Human Services had been assigned Ms. Strickland's rights as she was "receiving public assistance for or on the behalf of a dependent child or children" and has therefore assigned her collection rights to the state of North Carolina.

A subsequent pleading filed in the Gibson County Circuit Court by the State in May 2005 reads:

> The District Court of Carteret County North Carolina terminated support effective June 1, 2004 and found that the Respondent owed past due child support in the amount of $27,779.95 as of August 1, 2004 and ordered the Respondent to liquidate said arrears at the rate of $100.00 per month.

Inexplicably, the State did not file this support order.[6] Mr. Copley correctly points out that the

---

[5] "A party generally must assert his or her own legal rights and interests and cannot rest his or her claim to relief on rights or interests of third parties." 59 Am. Jur. 2d *Parties* § 38 (2008). The State asserts that Ms. Strickland was not properly before the Gibson County Circuit Court and that it was not proper to change custody of the children and order her to pay child support. The State is simply not the party to raise those issues.

[6] Support orders from other states must be registered in order to be enforced. Tenn. Code Ann. §§ 36-5-2601 *et seq.*; *see generally* Tenn. Att'y Gen. Op. 99-163 (discussing registration and enforcement of foreign child support
(continued...)

record lacks transcripts of the hearings held below and even lacks a statement of the evidence. The record comprises solely pleadings and orders—and, as noted, the North Carolina order from 2004 was never filed by the State.

The issue that confronts us in this case was addressed by the Arkansas Court of Appeals in *Office of Child Support Enforcement v. Watkins*, 119 S.W.3d 74 (Ark. Ct. App. 2003). The parties there were divorced in Arkansas, and Ms. Watkins, the wife, was granted child custody. She then moved to Missouri. In Missouri, Ms. Watkins began to receive public assistance and assigned her child support rights to that state. Subsequently, a judgment was entered against Mr. Watkins, her former husband, in favor of Missouri. She thereafter returned to Arkansas, and custody was awarded to Mr. Watkins with the obligation to pay child support now being placed upon Ms. Watkins. The trial court ordered that the amount owed by Mr. Watkins on the Missouri judgment be setoff by the amount Ms. Watkins now owed him for child support. The Court of Appeals reversed.

In reversing the trial court, the Court of Appeals reasoned as follows:

> Because Ms. Watkins was receiving public assistance while she resided in Missouri with the child, her child-support rights were assigned to the State of Missouri by operation of law. *See* Mo. Ann. Stat. § 208.055 (2002). Pursuant to Missouri Annotated Statutes section 454.410 (2002), support rights assigned to the state shall constitute an obligation owed to the state by the person responsible for providing such support, and the obligation shall be collectible pursuant to all legal processes. Through legal process, OCSE obtained a judgment against Mr. Watkins for unpaid child support, and Mr. Watkins took no appeal from the judgment. Significantly, Ms. Watkins's assignment of her rights to Missouri was not a voluntary assignment for her benefit, but by operation of law due to her receipt of public assistance for her minor child. Thus, collection on the judgment is a matter strictly between Missouri and Mr. Watkins.

> In this case, Mr. Watkins has no right to set off the judgment owed to the State of Missouri against the child-support arrearages owed to him by Ms. Watkins. At both the time of assignment and entry of the judgment, Ms. Watkins owed nothing to Mr. Watkins and thus, absent the assignment, Ms. Watkins would have had the right to collect on the judgment. As Mr. Watkins would have had no set-off defense against Ms. Watkins, he cannot now assert the defense against the assignee, State of Missouri. The fact that Ms. Watkins later became delinquent on her child-support obligation to Mr. Watkins does not affect the State of Missouri's right to collection on its judgment.

*Watkins*, 119 S.W.3d at 76.

---

[6](...continued)
orders); 19 W. Walton Garrett, *Tennessee Practice: Tennessee Divorce, Alimony & Child Custody* § 16.19, at 455-56 (2007).

The same logic applies here.  Thus, Mr. Copley may not avail himself of a setoff to deprive North Carolina of its recovery of public assistance.

This Court has previously ruled that a trial court cannot modify a prior State-assigned support order so as to prevent the State from recovering public assistance received by a parent.  *State ex rel. Mitchell v. Lea*, No. W2003-01650-COA-R3-JV, 2004 WL 2607564 (Tenn. Ct. App. Nov. 16, 2004).  While that case involved an assignment to the state of Tennessee and public assistance also paid by Tennessee, the principles stated in *Lea* apply no less fully to the obligation of Tennessee to enforce the collection of public assistance paid by a sister state.  *Cf., e.g., Commonwealth ex rel. Gagne v. Chamberlain*, 525 S.E.2d 19 (Va. 2000) (UIFSA required Virginia to enforce New Hampshire order reimbursing New Hampshire for public assistance paid to custodial parent).  The decision of the Arkansas court in *Watkins* is entirely consistent with this Court's opinion in *Lea*.

There is, as mentioned, a significant gap in the State's proof in this case.  The State contends in its reply brief that "clearly, it is undisputed that there are benefits to be recouped."  The State filed the North Carolina support order from 2001 showing arrears of $19,821.03 as of February 23, 2001, and this was made part of the record.  That arrearage is clearly for reimbursement of public assistance and cannot be setoff.  On the other hand, the State's contention that there are additional monies reflected in the North Carolina court's order from 2004 which cannot be setoff must be rejected.  Mr. Copley correctly points out that the 2004 order is not contained in the record and was not attached to the State's motion.  This Court has no way of ascertaining whether the additional amount accumulated between 2001 and 2004 was for reimbursement of public assistance or for direct child support not paid to Ms. Strickland.  We, therefore, conclude that the principles articulated in the *Watkins* case can only be applied to the arrearage amount found in the North Carolina court's 2001 order; as for the 2004 order, which was never filed, we cannot find that this additional amount is enforceable.

The State further contends that a setoff of past due child support is barred by Tenn. Code Ann. § 36-5-101(f)(1) and the principles set out in *Rutledge v. Barrett*, 802 S.W.2d 604 (Tenn. 1991).  The Court need not address these arguments as we have already determined that the arrears established in the 2001 North Carolina order cannot be setoff.  We have further found that the 2004 North Carolina order cannot be enforced here since there is no proof of registration, and it was never made of record.

-8-

## IV. Conclusion

Accordingly, the order of the Circuit Court for Gibson County is vacated, and this case is remanded for further proceedings consistent with this opinion and specifically for entry of an order reflecting that the arrearage amount established by the North Carolina court's 2001 order cannot be setoff by child support currently owed to Mr. Copley by Ms. Strickland. Costs of this case are taxed equally against the State and Mr. Copley for which execution may issue if necessary.

_____
WALTER C. KURTZ, SENIOR JUDGE